# FIRST NATIONAL BANK OF ROCK SPRINGS
## v. FOSTER.

CONSTITUTIONAL LAW — JURIES IN CIVIL CASES — UNANIMITY OF
VERDICT — APPEAL AND ERROR — EXCEPTIONS.

1. The statute (Sec. 3651, R. S.) authorizing a verdict in civil cases by three fourths of the jury is unconstitutional.

2. An act of the Legislature, providing that, in civil cases, a verdict may be found and returned by less than the whole number of jurors called to try the case, is not authorized by the provision of the constitution that "the right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts, not of record, may consist of less than twelve men, as may be prescribed by law."

3. An objection to the receiving of a verdict found and returned by less than the whole number of jurors, and an exception to the decision overruling the objection, is sufficient to preserve the question for review on error; notwithstanding that the complaining party did not object to an instruction that three fourths of the jury might return a verdict.

4. A party failing to object to an instruction that three fourths of the jury may return a verdict, does not waive his right to object to the reception of a verdict returned by less than the whole number.

[Decided June 25, 1900.   Rehearing denied March 12, 1901.]

ERROR to the District Court, Sweetwater County, HON. DAVID H. CRAIG, Judge.

At the September, 1899, term of the District Court for Sweetwater County, on Oct. 4, 1899, was tried this action, theretofore brought by Richard Foster, as plaintiff against the First National Bank of Rock Springs, as defendant. Said action was an action at law. A trial by jury was demanded, and the cause was tried by a jury of twelve men. The verdict of the jury was concurred in by only ten of the twelve jurors, two of the jurors refusing to concur in the verdict. Plaintiff in error objected to the

receiving and recording of said verdict which objection was overruled, and exception taken. The plaintiff in error duly filed its motion for a new trial and in arrest of judgment, and among the errors of law, complained of, it was alleged that the verdict was contrary to law, and that the verdict of the ten jurors was not a lawful verdict. Motion was overruled by the court, and judgment rendered on verdict against plaintiff in error, in favor of defendant in error to which plaintiff in error duly excepted. Plaintiff in error prosecuted this proceeding in error to reverse said judgment of the court.

*D. A. Reavill*, for plaintiff in error.

The validity of the verdict depends upon the validity of Sec. 3651 of Rev. Stat. which provides for such verdicts. That statute violates and is in conflict with the Constitution, and especially Sec. 9, of Art. 1, thereof. At the time our Constitution was adopted, the term "jury" had a well-defined meaning when referring to a trial jury. It meant a jury of twelve men whose verdict must be unanimous. (Am. Pub. Co. v. Fisher, 166 U. S., 464.)

When the term is used in the Constitution, it must be taken with its well-known and long-established meaning, unless the context discloses a different meaning.

By the language of section of the Constitution above cited it is clear that the term "jury," when referring to criminal cases in courts of record, maintains its Common Law meaning, but when it refers to civil cases or criminal cases in courts not of record, it appears to have received but one change in its Common Law meaning.

When referring to other than criminal cases in courts of record, the term "jury" no longer meant necessarily twelve jurors. This was the one and only change made in the term "jury" by the Constitution, and except for that change it remains the "jury" as at Common Law, i. e., a jury of twelve jurors rendering a unanimous verdict.

It is clear that the above section of our Constitution is in derogation of the Common Law right of jury in so far

as it empowers the Legislature to reduce the number of jurors in cases other than criminal cases in courts of record, and as such it must be strictly construed and not extended. (Sedg. on Construction of Stat., 2d Ed., 267, cases there cited.)

The power to destroy the unanimity in the verdict of the jury can not be inferred from the power to reduce the number of jurors below twelve.

The words, "but a jury in civil cases in all courts may consist of less than twelve men, as may be prescribed by law," unless they are mere surplusage, mean that the right of trial by jury is preserved as at Common Law, except the number might be reduced below twelve.

The above Constitutional provision expressly states how the Common Law right of trial by jury may be modified in civil cases, and by such expression has precluded any other modification therein. The maxim, "*Expressio unius est exclusio alterius*" is applicable.

The right of trial by jury in both criminal and civil cases was one of our most cherished institutions (Sedg. on Construction of Stat., 2d Ed., p. 482.) and it was not the intention of the framers of our Constitution to abolish this right in civil cases, because they have not used apt words to produce such result.

*John H. Chiles*, for defendant in error.

A State may, if it choose, provide for the trial of civil cases in State Courts by some different jury from that known to the Common Law. (Cooley, Const. Lim., 6th Ed., 29, 30; State v. Bates, 14 Utah, 293; 47 Pac. Rep., 78; Am. Pub. Co. v. Fisher, 166 U. S., 464.) Such was evidently the intention of our Constitutional Convention. (Article 1, Section 9.) To find the intent is the object of all interpretation, and if the true sense can thus be discovered, there is no resort to construction. (Suth. Stat. Const., 235, 236.)

Where the meaning of a statute or any statutory pro-

vision is not plain, a court is warranted in availing itself of all legitimate aids to ascertain the true intention; and among them are some extraneous facts. (Suth. Stat. Const., 292.) Thus, facts relative to foreign States and the general nature of their jurisprudence. (Id., 297.) And so it may be taken into consideration that at the time of the framing of our constitution, other States of the Union had adopted constitutional provisions encroaching upon the Common Law jury. (6 Ency. Law, 2d ed., 988, notes 1, 2, and 3.)

It is manifest that the framers of our constitution did not preserve the common Law Jury in civil cases.

In view of the contemporaneous legislation in other States upon the subject of jury trials, it is fair to presume that our constitutional convention was aware of it, and had in mind not to preserve the Common Law jury when the clause of constitution under consideration was adopted.

It preserved the right of trial by jury in criminal cases only, and then proceeded to say what the number of jurors in civil cases in all courts, and in criminal cases in courts not of record, might consist. See as construing a similar constitutional provision, Huston v. Wadsworth, 5 Colo., 213; In Re Senate Bill (Colo.), 56 Pac., 564. The plaintiff in error should not be allowed to question the verdict, because it made no objection to the instruction that the jury could return a three-fourths verdict. One who has tried to take advantage of a statute to the detriment of others will not afterwards be heard to object to its constitutionality. (6 Ency. L., 1090.)

*John H. Chiles*, and *T. Seddon Taliaferro, Jr.*, for defendant in error, on petition for rehearing. *Lindsey & Parks, amici curiæ.*

(Counsel appearing as *amici curiæ* made an elaborate argument by brief and also orally, basing their contention upon the many well-established rules of construction, and insisted that in Colorado the question was settled under a like constitutional provision, and in addition to the argument that the decisions of Colorado had virtually settled

the question in favor of the law, it was maintained that the ordinary rules governing the construction of statutes and constitutions, required that the statute should be upheld.   It was contended that the maxim " *expressio unis est exclusio alterius* " is more properly invoked to sustain a law rather than to destroy it ; that the real question is not to be found in the definition of the common law jury, but that the question is, What did the constitution reserve inviolate from legislative interference ?   The argument for the law was learnedly presented by counsel ; but before the decision on the petition for rehearing, the supreme court of Colorado having declared a similar law unconstitutional, counsel waived any further contention upon that question.   A more extended abstract of the argument on the question of the validity of the law is therefore not deemed necessary.)

It was, however, contended by counsel for defendant in error that the plaintiff had waived its right to object to the verdict, and raise any question as to the validity of the law by its failure to offer objection to the instruction of the court, that a three-fourths verdict might be returned, and cited the following authorities: 2 Herman on Estop., 824; Bigelow Estop., 718; Elliott App. Pro., 674, *et seq.*; Bank v. Warrington, 40 Ia., 528; R. R. Co. v. Marcott, 41 Mich., 433; Bates v. Ball, 72 Ill., 108; Hahn v. Miller, 60 Ia., 96; Morrish v. Murray, 13 M. & W., 52; Broom Leg. Max., 135; Muetze v. Tuteur, 77 Wis., 236; Wilson &c. v. Bull, 52 Ia., 554; Millet v. Hayford, 1 Wis., 401; Barnes v. Perrine, 12 N. Y., 18; Embury v. Connor, 3 id., 511; Baker v. Bramen, 6 Hill, 47; Hansford v. Barbour, 3 A. K. Marsh, 515; Barnett v. Barbour, 1 Litt., 396; Jones v. Patten, 3 Ind., 107; Dickson v. Rhodes, 87 id., 103; Corey v. Rhinehart, 7 id., 291; Wheeler v. State, 8 id., 113; Homberger v. State, 5 id., 300; State v. Bartlett, 9 id., 569; Jacobs v. Mitchell, 2 Colo. App., 456; 12 Ency. L., 166; 8 id., 162; 2 id., 516; 6 id., 1090; Elliott App. Pro. 630, 674. 690–92; 35 Ill. App., 499; Taft v. Northern Trans.

Co., 56 N. H., 414; Crump v. Thomas, 85 N. C., 272; Shultz v. Lempert, 55 Texas, 273; Stracy v. Blake, 1 M. & W., 168; Harrison v. Wright, 13 M. & W., 816; Booth v. Clive, 10 C. & B., 827; Hughes v. Veley, 7 Q. B., 455; Martin v. Railway Co., 16 C. B., 179; Child v. Roe, 1 E. & B., 279; Ferguson v. Landram, 5 Bush, 230; Lee v. Tillottson 24 Wend., 337; Hodges v. Winston, 95 Ala., 514.

*D. A. Reavill*, for plaintiff in error, filed a brief in opposition to petition for rehearing in answer to the briefs by the adverse parties, maintaining that the courts of Colorado had not settled the question, and generally, but somewhat more in detail, insisting upon his propositions contained in the original brief

CORN, JUSTICE.

Defendant in error brought suit against plaintiff in error upon a lost certificate of deposit. Under the instruction of the court that three-fourths of the jury might concur in and return a verdict, a verdict for the plaintiff was returned, signed by ten of the jurors, the other two refusing to concur.

The defendant below objected to the verdict being received for the reason that it was not unanimous, and therefore not a lawful verdict. The objection was overruled and the verdict entered, and the defendant took its exception. Our Declaration of Rights, Art. 1, Sec. 9 of the constitution provides: "The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts, not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter a grand jury may consist of twelve men, any nine of whom concurring may find an indictment, but the Legislature may change, regulate, or abolish the grand jury system.

Section 3651, Rev. Stats. 1899, provides that: "In all civil cases in any of the courts in the State of Wyoming, which shall be tried by a jury, three-fourths of

the number of the jurors sitting in any such case may concur in and return a verdict in said case, and such verdict shall have the same force and effect as though found and returned by all the jurors sitting in said case; but whenever such verdict is found and returned by a less number than twelve, said verdict shall be signed by each juror concurring therein." The plaintiff in error insists that the statute is in violation of the section of the constitution above quoted, and this is the only important question presented.

No other of the State constitutions, so far as we are advised, contains precisely the same provision as ours, except that of Colorado. But the general question, here involved, has repeatedly been before the courts of this country for consideration, and certain propositions which lie at the threshold of the discussion are well settled. It is conceded that, in almost all of the States, the Legislature may lawfully exercise not only such powers as are specifically enumerated, but that it is invested with the entire legislative power of the State except as restrained by the provisions of the constitution. And our constitution, in line with most of others, Art. 3, section 1, provides that "the legislative power shall be vested in a senate and house of representatives, which shall be designated 'The Legislature of the State of Wyoming.'" It is also so well settled as to require no reference to authorities that, when the constitution secures to litigants the right of trial by jury, the Legislature has no power to deny or impair such right. The courts have uniformly held also that the word "jury" as used in our constitutions, when not otherwise modified, means a common law jury composed of twelve men, whose verdict shall be unanimous. As stated by the supreme court of Minnesota: "The expression 'trial by jury' is as old as magna charta, and has obtained a definite historical meaning which is well understood by all English-speaking peoples; and, for that reason, no American constitution has ever assumed to define it. We are therefore relegated to the history of

the common law to ascertain its meaning. The essential and substantive attributes or elements of jury trial are and always have been number, impartiality, and unanimity. The jury must consist of twelve; they must be impartial and indifferent between the parties; and their verdict must be unanimous." Lommen v. Minneapolis Gaslight Co., 65 Minn., 196. An extended list of the cases is given in the note to State v. Bates., 43 L. R. A., 48.

It is unquestioned also that at the adoption of the constitution the right existed in Wyoming as at common law; that is, in felonies and in all common law cases in the district court, our court of general common law jurisdiction, the right was to an impartial jury of twelve men and a unanimous verdict. It is also conceded that the people of the State had the power by their constitution to preserve or abrogate the right, or make such modifications of it and establish such modes of trial as might be deemed expedient. These general propositions being settled, the question before us is to ascertain to what extent the right of trial by jury as above defined, is preserved by the section of the Declaration of Rights above quoted.

As to the right in criminal cases, there is no room for construction. The language is express that it shall remain inviolate; that is, that a person charged with crime has the right as heretofore to demand a trial by twelve impartial men whose verdict must be unanimous in order to support a judgment. In civil cases the language is also express as to the matter of number, one of the three essentials of a jury trial at common law, and the Legislature is empowered to provide by law for juries consisting of less than twelve. There is no room for construction. But there is no specific mention in the section or anywhere in the constitution of the third essential of unanimity. Is it then to be deemed a matter unprovided for, a right not preserved, leaving the Legislature at full liberty to enact such laws upon the subject as it may deem proper, unrestrained by the constitution? We do not think so.

The whole section must be construed together. The subject of it is the right of trial by jury, and we think the intention of the framers reasonably appears to have been to preserve the right inviolate in criminal cases, and to point out, by way of permission to the Legislature, wherein the common law might be invaded by statute in civil cases. It is as if the constitution had said: "With reference to the right of trial by jury, it is provided that in criminal cases it shall remain in all respects as heretofore. In civil cases it shall remain as heretofore, *except* that the Legislature may provide for a number less than twelve to constitute a jury." There is no other reasonable construction, for if a rule is to be applied that the Legislature have power to enact any laws upon the subject unless prohibited in express language, then they may entirely abolish the right and practice of trial by jury in civil cases, for they are not expressly prohibited from so doing. Yet, there appears nowhere in the constitution any intention to abrogate the right or to substitute any other mode of trial. But the form of statement, when viewed in the light of the surroundings, makes it manifest that the intention was to preserve the right. The provision in regard to number is by way of permission, indicating clearly that, in the judgment of the framers of the constitution, permission was necessary. It is also stated as an exception, the word "but" being used in its very customary meaning of "except." That it is stated as an exception is also shown by the use of the word "jury" itself. It can not be supposed that the convention were ignorant of the legal meaning of the word, but they must be presumed to have used it in its correct legal sense of a body of twelve impartial men whose verdict must be unanimous. And it is evident they did so use it. It is so used in the first clause securing the right inviolate in criminal cases. The provision that the number may be less than twelve is clear evidence that the word as used referred to the body universally known to be composed of twelve men. It is permission to the Legislature to make a designated change in the common law jury, to reduce the common law num-

ber, twelve. It is not essential that a prohibition upon the Legislature should be in express terms. It may be by implication. Page v. Allen, 58 Pa. St., 345. It will scarcely be contended that an act would be valid providing for the trial of causes by a jury chosen by the plaintiff, or by the party by whom the jury was first demanded, thus disregarding the element of impartiality. Yet by the argument of counsel there is no prohibition upon such legislation. And it is indeed no more prohibited than a disregard of the element of unanimity is prohibited. Neither is prohibited except by the use of the word "jury," the plainly implied provision for "trial by jury," which, as matter of definition, necessarily involve and include both impartiality, and unanimity of verdict.

This view is fortified by reference to the remainder of the section in regard to the grand juries: "Hereafter a grand jury may consist of twelve men, any nine of whom concurring may find an indictment, but the Legislature may change, regulate, or abolish the grand jury system." Here it was deemed necessary, if the grand jury system was to be changed or abolished by law, that the Legislature should have express permission to take such action. But any such permission to change, regulate, or abolish the system of trial by jury is conspicuous by its absence. The reasonable conclusion is that there was no intention to give it, or to permit any interference with the right to the ancient, customary, and familiar mode of trial, except in the one particular pointed out.

Some other States adopting constitutions in comparatively recent years have provided for the change in the jury system attempted in the act under consideration. But in every case, so far as our investigation has extended, the change has been made either by a direct constitutional provision, or by specific authority contained in the constitution empowering the Legislature to make it. Only in Colorado and this State has the attempt been made to accomplish the purpose by legislative enactment without express constitutional sanction. The question

has not been directly passed upon by the Colorado court. But in Huston v. Wadsworth, 5 Colo., 213, the question was as to the power of the trial court to refer a common law action without the consent of the parties. And in sustaining the procedure the supreme court of that State say: "Section 23 of the bill of rights, referred to in the appellant's brief, secures the right of trial by jury in criminal cases, but imposes no restriction upon the Legislature in respect to the trial of civil causes." Subsequently a bill in substance the same as Section 3651 of our statutes was pending before the Legislature, and upon its being referred to the attorney-general his opinion was that it was in conflict with the clause of the constitution above quoted. Upon a further reference to the supreme court for their opinion, they say that the language of the court, as constituted when the decision in Huston v. Wadsworth was rendered, supports the constitutionality of the act. But under their rule in such cases, they decline either to question or sanction the correctness of that opinion in an *ex parte* proceeding. In Re Senate Bill No. 142; 56 Pac., 564. The most that can be said, therefore, perhaps is that the question of the constitutionality of the act is undetermined in Colorado.

In order to sustain the constitutionality of this section of the statute, it is necessary for this court to say that there is no right of trial by jury in civil cases under the constitution in this State, but that each succeeding session of the Legislature may invent and establish any mode of trial that the whim of the hour or any supposed exigencies of convenience or economy might dictate. Under such a ruling it would be competent for the Legislature to provide that the judge of the district should call into court the partisan board of county commissioners and submit to them for decision by a majority vote all civil causes pending in any county. It is perfectly clear that no such revolutionary destruction of ancient landmarks was ever contemplated. The whole tenor of the instrument makes it plain that the ancient method of trial by jury was not

to be abandoned, but was to be retained and preserved except as designated in the constitution itself, and what the essentials of that method are, is not a matter of construction or conjecture. We think the statute is clearly unconstitutional.

It is further objected that no exception was taken to the instruction of the court that three fourths of the jury might return a verdict, and that the defendant must be held to have waived its right. But the receiving and entering of the verdict were objected to, and exception taken to the decision of the court in overruling the objection. This exception brings the question regularly before this court for its decision, and the most that can be claimed is that the erroneous instruction will not be considered as a ground of reversal.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed.*

POTTER, C. J., and KNIGHT, J., concur.

ON PETITION FOR REHEARING.

CORN, JUSTICE.

In the course of the trial in this case the court instructed the jury that they might return a verdict upon the concurrence of three fourths of their number. The record shows no objection to this instruction by either party, and it seems that none was in fact made. But upon the return of the jury into court with a verdict signed by ten of their number, the defendant by its counsel requested that the jury be polled. From the poll it appeared that only ten of the twelve jurymen concurred in the finding, and defendant then objected to the receiving and entry of the verdict for the reason that it was not a lawful verdict. The court overruled the objection and received the verdict and plaintiff in error excepted.

The defendant in error insists that, by its failure to

object to the instruction, plaintiff in error waived its right
to object at any future stage of the proceedings to the
acceptance of a verdict found by less than the whole num-
ber, and a great many authorities are cited in support
of the proposition.   We have read a large number of the
cases cited, and have given a careful examination to those
specially relied upon.   They establish beyond contro-
versy, if any authority was required, that error may be
waived.   It may be waived by consent, either express or
implied, or by such conduct of the party as will estop him
from afterward objecting.   But we fail to find any case
holding a party to have consented when the action com-
plained of was objected to before it was taken and an
exception preserved, at the time, to the decision of the
court overruling such objection.   Indeed, it would be a
contradiction in terms to say that there was consent to the
action of the court when such action was objected to
before it was taken and the court informed by an imme-
diate exception that the objection would be insisted upon.

But where there has been no consent, illustrations are
not wanting where a party by his conduct or by his
silence loses his right to interpose objections which would
otherwise be available.   If, for instance, in support of
his case he introduces incompetent evidence, he can not
afterward object if his opponent pursues the same line of
evidence.   He has opened the door.   If he has joined in
the trial of the cause upon a particular theory, he can not
afterward be heard to object that it was a false theory.
He is held to the theory which he maintained or to which
by his silence he assented.   But all such cases depend
upon the principle that the court, or his opponent has
been led into error which, but for his apparent assent, it
is presumed would have been corrected.   And nothing of
the kind appears in this case.   The instruction to which
he failed to object, and which, it is claimed, estops him
from objecting to an illegal verdict, was a mere announce-
ment to the jury that they might reach a verdict by the
concurrence of three fourths of their number.   It an-

nounces no principle of law, nor any theory of the case. By his failure to object, the court was not misled in its procedure, and the opposing counsel was not betrayed into any step prejudicial to his own case. It is urged that counsel took an unfair advantage in offering no objection until he ascertained that the verdict was against him. But he took no advantage which was not equally open to counsel on the other side in case a verdict should have been adverse to him. He was not in bad faith with the court; for the court was not proceeding in the matter by consent of parties, but by authority of a void statute.

Moreover, it is the ultimate ruling in any case which constitutes available error. Ell. App. Proc., Sec. 590. If the jury had finally reached a unanimous verdict, the erroneous instruction would have been harmless to either party, unless perhaps actual prejudice could be shown by its influence upon the deliberations of the jury. The time to object and to save an exception is when the irregularity occurs. Thompson on Trials, 700. The irregularity complained of in this case was the acceptance of a verdict agreed to by less than the whole jury. The objection was in time for the court to correct its error and direct the jury to retire for further deliberation.

It would not be practicable to refer to all the authorities cited by counsel and keep this opinion within reasonable limits. But it may be proper to distinguish some of them from the case under consideration, choosing those which seem to be most relied upon.

In Chicago Driving Park v. West, 35 Ill. App., 496, the case was tried by the court without a jury, and the appellant insisted in the appellate court that it was entitled to a trial by jury and had not waived its right. The court disposed of the matter by saying: "If appellant desired a trial by jury and had objected to the trial by the court, it would have been error to have denied him a jury; but as he was present by his counsel, and failed to interpose any objection of that kind, he waived his right to have the case submitted to a jury." Barnes v. Perrine,

12 N. Y., 23, decides only that a party having treated the questions as purely legal, and acquiesced in the disposal of them by the court as such, can not on appeal be heard to object that facts were involved which should have been decided by the jury.   In Millett v. Hayford, 1 Wis., 355, the case was tried in the county court by a jury of six under the act creating the court.   Plaintiff in error claimed that the statute was unconstitutional, in so far as it limited the jury to six persons.   The court refused to consider the constitutional question upon the ground that the record did not show that the plaintiff in error made any objections to the jury, and that in the absence of such objection it must be presumed that he consented to submit his case to a jury, as allowed by the statute.   In Wilson S. M. Co. v. Ball, 52 Iowa, 554, a reversal was asked for upon the ground that the court permitted evidence to be introduced which was not justified by the pleadings.   In affirming the judgment the supreme court said that it was sufficient to say that no such objection was made to the introduction of the evidence in the court below, and that it was not even objected in general terms that the evidence was incompetent.   In the case under consideration objection was made to receiving the verdict, the very action of the court which is complained of.   In the cases cited, the ground of the decision is that no objection was made.   It is so evident that they and similar cases cited do not even tend to sustain the position of plaintiff in error that further comment upon them is unnecessary.

But counsel insist that Farrell v. Hennesy, 21 Wis., 639, is very similar in some of its features to the case before us, and that it sustains counsel's contention.   The jury brought in a verdict for the plaintiff, and they were polled upon demand of defendant's counsel.   One of the jurymen answered: "It was and is my verdict, but it is contrary to my conscience.   I only consent to it because all the rest have given in to the plaintiff."   The verdict, however, was received and recorded without any

objection by the defendant.   He subsequently moved to
set it aside, upon affidavits showing the above facts, and
upon his motion being overruled appealed to the supreme
court.   Even in the face of the fact that the verdict was
received and recorded absolutely without objection, that
court say they find no little difficulty in determining what
should be the effect of a verdict received under the circum-
stances disclosed.   They finally, however, reach the con-
clusion that the time to raise an objection of this nature is
before the verdict is received, and when an opportunity
exists for the jury to reconsider their verdict, and if the
objection is not then taken it is waived.   But they add
that even though no objection was taken at the time by
the defeated party, it was clearly the duty of the court
upon its own motion to have directed the jury to retire
and reconsider their verdict.   It is a little difficult to see
how counsel for plaintiff in error find in this decision any
support of their position, when it points out the very
method pursued by the defendant in this case as the
proper one and declares the objection waived by a failure
to adopt it.   But there is one other decision, in the
English case of Morrish v. Murrey, 13 M. & W., 52, which
plaintiff in error claims to be decisive in its favor.   The
judge was of the opinion that one of the defendant's pleas
was a sufficient answer to the action and that it was
proved, and that the judgment must be for the defendant.
But he left it to the jury to say what amount of damages
the plaintiff had sustained, so that, in the event of the
court being of the opinion that the plea was not proved,
the plaintiff might enter judgment for the damages so
found by the jury.   This course was unauthorized by law,
and could only be pursued by the consent of the parties;
but neither party offering any objection, the jury returned
their verdict assessing plaintiff's damages at one farthing.
The court held that the judge was in error in holding the
plea sufficient, and the plaintiff insisted that she was en-
titled to a new trial on the ground of misdirection.   But
the court held that having consented to the assessment of

the damages contingently, she was precluded from insisting upon the misdirection, and could only move to enter a verdict for the sum found by the jury.    It is perfectly apparent that this case, like the others referred to, is distinguished from the one before us by the essential fact that the unauthorized act of the court was not objected to at the time it was committed.

We have gone into great and perhaps unnecessary detail in the discussion of the question presented.    But we have done so out of deference to the great earnestness and unquestioned sincerity with which counsel have maintained the correctness of their views.

We understand that the request for a rehearing upon the ground that this court erred, in holding the statute in question to be unconstitutional, is no longer urged, the supreme court of Colorado having since announced the same conclusion in a very able and exhaustive opinion in the case of The City of Denver v. Minnie L. Hyatt.

*Rehearing denied.*

POTTER, C. J., and KNIGHT, J., concur.