**Walter E. TAYLOR, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 5214.**

Supreme Court of Wyoming.

May 30, 1980.

Gerald M. Gallivan, Atty.-Director, Wyoming Defender Aid Program, Richard R. Honaker, Public Defender, Cheyenne, Michael H. Schilling, App. Counsel, State Public Defender, and Paul H. Byrtus, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Richard Scott Rideout, Asst. Atty. Gen., Marta Adams, Asst. Atty. Gen., Cheyenne, and Lowell H. Fitch, County Atty., Goshen County, for appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This appeal asks this question: May a criminal defendant in a Wyoming State court waive his right to a unanimous jury verdict by stipulating with the State and the court that a majority jury verdict will govern? We will hold that a defendant may waive a unanimous verdict under the conditions and according to the standards herein set out and established, but, under the facts of this case, the defendant did not do so. We will, therefore, reverse the 10 to 2 majority verdict finding the defendant guilty of aggravated robbery and remand for a new trial.

When a jury was unable to return a unanimous verdict in appellant-defendant's trial for aggravated robbery, Mr. Taylor, the defendant, the defense counsel, the prosecuting attorney and the court agreed to accept a 10 to 2 majority verdict. The record demonstrates that the appellant's trial attorney intended to waive appellant's right to a unanimous verdict and to waive

the right to appeal the very issue here presented. The court twice secured an affirmative answer from Mr. Taylor when he was asked if a majority verdict would be acceptable to him. The court also secured an acknowledgement from the appellant to the effect that a nonunanimous guilty verdict would not be appealed.

The record does not reveal that Taylor had been advised of or knew the consequences of declining to enter into the above-mentioned agreement and insisting upon his right to a unanimous verdict.

## THE COMMON–LAW JURY TRIAL—A CRIMINAL DEFENDANT'S UNDISPUTED RIGHT

It is beyond dispute that the Wyoming Constitution guarantees a criminal defendant in a court of record the right to a unanimous verdict by twelve impartial jurors, i. e., a common-law jury trial. Wyoming Constitution, Article 1, Section 9[1], and *First National Bank v. Foster*, 9 Wyo. 157, 61 P. 466 (1900), rehearing denied 9 Wyo. 168, 63 P. 1056 (1901).[2] The issue

1. Article 1, Section 9, Constitution of Wyoming, provides in pertinent part:
 "*Trial by jury inviolate.*—The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law . . . ."

2. Relying upon Wyoming's Declaration of Rights, Article 1, Section 9, of the Constitution of Wyoming, we held in *First National Bank v. Foster*, supra, that a statute which dispensed with a unanimous verdict was void. In ascertaining the import of the word "jury," as used in Article 1, Section 9, of our Constitution, we held that the right of trial by jury was a common-law right personal to the criminal defendant. We said:
 " . . . The courts have uniformly held also that the word 'jury,' as used in our constitutions, when not otherwise modified, means a common-law jury composed of 12 men, whose verdict shall be unanimous. As stated by the supreme court of Minnesota: 'The expression "trial by jury" is as old as Magna Charta, and has obtained a definite historical meaning, which is well understood by all English-speaking peoples; and for that reason no American constitution has ever assumed to define it. We are therefore rele-

gated to the history of the common law to ascertain its meaning. The essential and substantive attributes or elements of jury trial are, and always have been, number, impartiality, and unanimity. The jury must consist of twelve. They must be impartial and indifferent between the parties; and their verdict must be unanimous.' *Lommen v. Gaslight Co.*, 65 Minn. 196, 68 N.W. 53, 33 L.R.A. 437. An extended list of the cases is given in the note to *State v. Bates*, (Utah) 43 L.R.A. 48 (s.c. 47 Pac. 78). It is unquestioned, also, that at the adoption of the constitution the right existed in Wyoming as at common law; that is, in felonies and in all common-law cases in the district court—our court of general common-law jurisdiction—the right was to an impartial jury of 12 men and a unanimous verdict. It is also conceded that the people of the state had the power by their constitution to preserve or abrogate the right, or make such modifications of it, and establish such modes of trial, as might be deemed expedient. These general propositions being settled, the question before us is to ascertain to what extent the right of trial by jury, as above defined, is preserved by the section of the declaration of rights above quoted. As to the right in criminal cases there is no room for construction. The language is express

before the court in this appeal is, however, whether or not common-law-trial-by-jury requirements may be discharged in a state criminal trial by a jury of twelve impartial persons rendering, with the consent of the court, State and defendant, a verdict which is less than unanimous. In other words, may a unanimous verdict be waived in Wyoming where the common-law criminal jury trial is a constitutional guarantee? There are no opinions of this court which answer this question.

■ As has been noted, fn. 2, supra, this court declared at the turn of the century that the criminal defendant has an absolute right to a common-law jury trial. The Wyoming Rules of Criminal Procedure provide for waiver of the defendant's right to be tried by a jury, Rule 24(a), W.R.Cr.P.[3] and the defendant's right to waive a jury trial has never been questioned before this court. Rule 32, W.R.Cr.P.[4], is concerned with the verdict in a criminal jury case. Subsection (a) requires the verdict be unanimous; and subsection (d) provides for the polling of the jury when the verdict is returned to the court. The last-mentioned subsection further provides that if the polling does not produce unanimity, the jury may be either discharged or directed to retire for further deliberation. These rules make no provision for accepting a less-than-unanimous verdict and no provision concerning waiver of rights governed by Rules 24(a) and 32, supra. The rules do, however, speak to the proposition that we, in adopting them (and consistent with *First National Bank v. Fos-*

ter, supra), have rejected any argument that might be advanced to the effect that the public has an interest in the resolution of a criminal trial through the common-law jury process only. In other words, the rules implicitly acknowledge that the right to trial by jury is a constitutional right of the defendant, the waiver of which is qualified in the context that it may not be exercised without the approval of the court and the consent of the State[5].

### Historical Overview

3 W. Blackstone, Commentaries, observes:

"In order to avoid intemperance and causeless delay [the jury] are to be kept without meat, drink, fire or candle, unless by permission of the judge, till they are all unanimously agreed." 3 Id. at 375.

In addition to being compelled to deliberate without "meat, drink, fire or candle," the search for jury unanimity in early England carried with it another hazard. The Blackstone Commentaries go on to observe that while the jury was not *required* to reach a unanimous verdict by the time the judge left the town, if they did not do so they were obligated to trail after him, being carried around the circuit in a cart. Further, at 3 W. Blackstone, Commentaries, 379, it is said:

"Upon these accounts the trial by jury ever has been, and I trust ever will be, looked upon as the glory of the English

---

that it shall remain inviolate; *that is, that a person charged with crime has the right, as heretofore, to demand a trial by 12 impartial men, whose verdict must be unanimous in order to support a judgment . . . .*" (Emphasis supplied.) 61 P. at 466–467.

3. Rule 24(a), W.R.Cr.P., provides:
 "*Trial by the jury or by the court.*
 "(a) *Trial by jury.*—Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the state."
 This rule is identical to Rule 23(a), F.R.Cr.P.

4. Rule 32, W.R.Cr.P., provides in relevant part:
 "*Verdict.*

"(a) *Return.*—The verdict shall be unanimous. It shall be returned by the jury to the judge in open court.

\* \* \* \* \* \*

"(d) *Poll of jury.*—When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."
Wyoming's Rule 32(a) and (d) are identical with Rule 31(a) and (d), F.R.Cr.P.

5. See a full discussion of the fallacy of the public-interest concept in *Patton v. United States*, 281 U.S. 276, 313, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930).

law . . . [I]t is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbours and equals. . . . ."

Jury trials could not be waived by consenting defendants at common law. *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). The choice was first given in America in Massachusetts and Maryland. The first constitution of Massachusetts—"The Body of Liberties of 1641"—contained as Liberty XXIX the following:

"'In all actions of law, it shall be the liberty of the plaintiff and defendant, by mutual consent, to choose whether they will be tried by the bench or by a Jury, unless it be otherwise determined. The like liberty shall be granted to all persons in Criminal cases.'" 380 U.S. at 28–29, 85 S.Ct. at 787.

Early proceedings of the General Assembly in Maryland contained the following from an Act of 1642:

"' . . . The Defendt. in any cause civill or Criminall may put himself for tryall upon the judge or Court, or, upon his Country or may wage his Law in cases allowable by the law of England[.] if both parties joyn in the tryall it Shall be tryed according to their agreemt.' I Archives of Maryland 151, 186 (1642)." *State v. McKay*, 280 Md. 558, 375 A.2d 228, 233 (1977).

**6.** Article III, Section 2, provides in relevant part:

"The trial of all Crimes . . . shall be by jury; . . ."

**7.** It is said in *Singer*, supra:

"In no known federal criminal case in the period immediately following the adoption of the Constitution did a defendant claim he had the right to insist upon a trial without a jury. Indeed, in *United States v. Gibert*, 25 Fed. Cas. p. No. 1287 (No. 15204) (C.C.D.Mass. 1834), Mr. Justice Story, while sitting on circuit, indicated his view that the Constitution made trial by jury the only permissible method of trial. Similar views were expressed by other federal judges. See *ex parte McClusky*, 40 F. 71, 74–75 (C.C.D.Ark.1889)

After the adoption of the United States Constitution, and particularly by reason of Article III, Section 2[6], which was calculated to protect the defendant from government oppression, it was long believed that jury trial was the only method of deciding a criminal case in this country.[7]

The issue of whether a defendant could waive a jury trial in a federal case was first presented to the United States Supreme Court in *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), fn. 5, supra. While the case did not contemplate trial before a judge alone, the waiver of a unanimous twelve—in favor of a unanimous eleven-man jury was considered by the Supreme Court as though it did because waiver of common-law-jury-trial rights of any kind was so foreign as to be thought about as tantamount to waiver of the right to trial by jury itself.

The *Patton* Court examined Article III, Section 2, fn. 6, supra, and the Sixth Amendment[8] and decided that a jury trial was a right which the accused might "forego at his election." In its opinion, the Court spoke of the right to trial by jury as a "privilege," not an "imperative requirement," and observed that jury trial was principally for the benefit of the accused. The *Patton* Court went on to make the following observation concerning the issue of waiver of the defendant's right to trial by jury:

" . . . Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the main-

(by implication); *United States v. Taylor*, 11 F. 470, 471 (C.C.D.Kan.1882) (dictum)." 380 U.S. at 31–32, 85 S.Ct. at 788.

**8.** The Sixth Amendment to the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

tenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, *in addition to the express and intelligent consent of the defendant.* And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity." 281 U.S. at 312–313, 50 S.Ct. at 263. (Emphasis supplied.)

The court, in *State v. McKay,* supra, comments:

" . . . Nevertheless, the Court's decision in *Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, is instructive. There, the Court said that the jury trial afforded by Article III and the Sixth Amendment is 'a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted.' Id. at 288, 50 S.Ct. at 254. This, as we observed earlier, included the element of unanimity. In holding that an entire jury or the presence of any of its members could be waived by the defendant with the consent of the court and the prosecution, the *Patton* court concluded 'that the framers of the Constitution simply were intent upon preserving the right of trial by jury *primarily for the protection of the accused.*' Id. at 297, 50 S.Ct. at 257." 375 A.2d at 233. (Emphasis supplied.)

As has been noted, the common-law concept of trial by jury, which includes a unanimous verdict, was and is reflected in Article 1, Section 9, of our Constitution, as interpreted by *First National Bank v. Foster,* supra, and codified by Rule 32, W.R. Cr.P., fn. 4, supra. In *First National Bank,* supra, we had held nearly thirty years before *Patton,* supra, that the jury-trial right was designed to protect the criminal defendant. Fn. 2, supra. Our Rule 24(a), fn. 3, supra, contemplates jury-trial waiver consistent with the holding of *First National Bank* and the *Patton* Court.

Rule 23(b) of the Federal Rules of Criminal Procedure, adopted in 1940, codified the *Patton* requirement of twelve with stipulated right of waiver.[9] Wyoming has no corollary 23(b) waiver rule.

Until *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the decisions of the Supreme Court assumed that the trial by jury contemplated by the Federal Constitution (Article III, Section 2, clause 3, fn. 6, supra) meant a jury trial as envisioned by the common law. The elements of a common-law jury trial were

" . . . the presence and superintendence of a judge having the power to instruct the jury on the law and advise them upon the facts, and the unanimous verdict. [Citing *Patton* (dictum)]." *State v. McKay,* supra, 375 A.2d at 231. From this it followed that unanimity was "required where the Sixth and Seventh Amendments apply." *Andres v. United States,* 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948).

It was for Justice White to query the earlier decisions when, in *Williams,* supra, he said:

"'[T]he relevant constitutional history casts considerable doubt on the easy assumption in our past decisions that if a

9. Rule 23(a) and (b), F.R.Cr.P., provides:

"(a) *Trial by Jury.* Cases required to be tried by a jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and consent of the government.

"(b) *Jury of Less than Twelve.* Juries shall be of 12 but at any time before verdict the

parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any cause after trial commences." (As amended April 26, 1976, effective October 1, 1977.)

given feature existed in a jury at common law in 1789, then it was necessarily preserved in the Constitution,' . . . ." 399 U.S. at 92–93, 90 S.Ct. at 1902.

Deciding that the absence of the expressed unanimity requirement in the Sixth Amendment was a substantive omission, the Court, in *Williams*, supra, observed that had Congress wished to leave no doubt that it was incorporating common-law features in the jury system, it would have expressed the Sixth Amendment language to that effect.

The author of the opinion in *State v. McKay*, supra, says:

" . . . In holding that the Sixth Amendment, as applied to the states through the Fourteenth Amendment, was not violated by a state law providing for a six-man rather than a 12-man jury in noncapital cases, the *Williams* Court leaned heavily on what is regarded as this absence of demonstrated intent by the framers 'to equate the constitutional and common-law characteristics of the jury.' Id., 399 U.S. at 99, 90 S.Ct. at 1905." 375 A.2d at 231.

The Court, in *Williams*, in coming to this conclusion, left for another day the question of whether unanimity

"is an indispensable element of the Sixth Amendment jury trial . . . ." 399 U.S. at 100, fn. 46, 90 S.Ct. at 1906.

In 1972, in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184, the United States Supreme Court held that a state jury's verdict need not be unanimous, even though unanimity was the rule of common law. In this decision, the Court upheld an Oregon statute providing that only 10 members of a 12-person jury need concur to render a verdict in certain non-capital cases.

In *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), decided

the same day as *Apodaca*, supra, a plurality of the Court held that a conviction by a state jury's 9 to 3 verdict in certain non-capital cases did not violate the due-process clause for failure to satisfy the reasonable-doubt standard and did not deny equal protection.

In *Ballew v. Georgia*, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), the United States Supreme Court held that a jury of less than 6 members failed to pass constitutional scrutiny (a question explicitly reserved in *Williams*, supra). And in *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), in separate opinions, the Supreme Court held that a conviction by a nonunanimous 6-person jury in a trial for a nonpetit offense deprives an accused of his rights to a trial by jury. Thus—the Supreme Court has held that the Constitution permits less than 12 persons, but requires at least 6. *Ballew*, supra; and *Williams*, supra. Furthermore, the Court has approved less-than-unanimous verdicts in states involving 12-person juries. *Apodaca* (10–2), supra; and *Johnson* (9–3), supra.

The Federal circuit courts reviewing federal prosecutions have reversed convictions on a less-than-unanimous verdict, even where the defendant "waived" the unanimity requirement under the provisions of Rule 23(a) and (b), F.R.Cr.P., fn. 9, supra. *Hibdon v. United States*, 6 Cir., 204 F.2d 834, 838 (1953) (Unanimity is a procedural requirement but is also inextricably interwoven with the proof-beyond-a-reasonable-doubt standard); *United States v. Lopez*, 9 Cir., 581 F.2d 1338, 1340 (1979) (Federal Rules require unanimity: The only alternatives available to the trial judge when a jury is deadlocked is to discharge or an instruction to deliberate further); and *United States v. Scalzitti*, 3 Cir., 578 F.2d 507, 510–512 (1978) (Federal Rules and Federal Supreme Court precedent [10] require a

---

10. In the companion cases of *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), a divided Supreme Court upheld the validity of state criminal convictions which were predicated on less than unanimous 12-person jury ver-

dicts as authorized by law. The *Scalzitti*, supra, court found there were four other Justices in agreement with Mr. Justice Powell's concurrence in *Apodaca*, supra, in which he said " 'that unanimity is one of the indispensable features of *federal* jury trial.' " 578 F.2d at 511.

unanimous verdict in a federal court). See, also, *United States v. Morris*, 10 Cir., 612 F.2d 483 (1979), in which the court said that in federal criminal trials, unanimity is both a procedural and Sixth Amendment, fn. 8, supra, requirement which cannot be waived. *Morris*, supra, 612 F.2d at 488–489.[11]

### The Issue Before This Court

The issue before this court is not whether a defendant can waive a unanimous verdict under the United States Constitution, but whether or not, by reason of the Sixth Amendment, fn. 8, supra, and Article III, Section 2, of the Federal Constitution, fn. 6, supra, as made applicable to the states by the Fourteenth Amendment to that Constitution, the defendant can waive a unanimous verdict in a state criminal trial.

> The Court in *Burch*, supra, observes:
>
> "Only in relatively recent years has this Court had to consider the practices of the several States relating to jury size and unanimity. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), marked the beginning of our involvement with such questions. The Court in *Duncan* held that because trial by jury in 'serious' criminal cases is 'fundamental to the American scheme of justice' and essential to due process of law, the Fourteenth Amendment guarantees a state criminal defendant the right to a jury trial in any case, which, if tried in a federal court, would require a jury under the Sixth Amendment. *Id.*, at 149, 158–159, 88 S.Ct. at 1447, 1452–1453."

The opinion goes on to observe that in 1972 the Supreme Court held that

> ". . . a jury's verdict need not be unanimous to satisfy constitutional requirements, even though unanimity had been the rule at common law. Thus, in *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), we upheld a state statute providing that only 10 members of a 12-person jury need concur to render a verdict in certain noncapital cases. In terms of the role of the jury as a safeguard against oppression, the plurality opinion perceived no difference between those juries required to act unanimously and those permitted to act by votes of 10 to two. 406 U.S., at 411, 92 S.Ct., at 1633. Nor was unanimity viewed by the plurality as contributing materially to the exercise of the jury's commonsense judgment or as a necessary precondition to effective application of the requirement that jury panels represent a fair cross-section of the community. *Id.*, at 410, 412, 92 S.Ct. at 1632, 1633."

In footnote 8 the author of the opinion observes:

> "*Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), was decided the same day as *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and held that conviction by a 9–3 verdict in certain noncapital cases did not violate the Due Process Clause for failure to satisfy the reasonable doubt standard. Unlike *Apodaca*, *Johnson* involved a trial held prior to *Duncan v. Louisiana*, supra, which the Court in *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), held was not to be applied retroactively, and therefore did not implicate the Sixth Amendment as applied to the States through the Fourteenth. 406 U.S. at 358, 92 S.Ct. at 1622."

■ It would seem, then, since *Johnson* and *Apodaca*, supra, hold the Sixth Amendment is not offended through application of the Fourteenth Amendment by state provisions imposing less-than-unanimous verdicts in criminal jury trials (excepting capital

---

**11.** In *United States v. Morris*, supra, at 612 F.2d, pp. 488–489, the court said:

> "We start with the proposition that in a federal criminal case the requirement of unanimity applies not only by reason of F.R. Crim.P., Rule 31(a), but also by reason of the Sixth Amendment. *Andres v. United States*, 333 U.S. 740, 748, 68 S.Ct. 880, 92 L.Ed. 1055; *United States v. Gipson*, 553 F.2d 453, 456 (5th Cir.). It is a right so fundamental that it may not be waived. *E. g., United States v. Scalzitti*, 578 F.2d 507 (3d Cir.)." (Footnote references omitted.)

cases) despite the defendant's refusal to consent—that neither are these constitutional safeguards violated when a state criminal defendant in Wyoming gives his voluntary and informed consent to a majority verdict.

We pass on, then, to the question of whether or not there are any Wyoming constitutional provisions, rules, or opinions of this court which would preclude a Wyoming criminal defendant's waiver of his right to a unanimous verdict.

*Waiver Generally: Rights of the Accused.*

It is to be recalled that at early common law, the accused was not permitted to waive rights intended for his protection. *Journigan v. State*, 223 Md. 405, 164 A.2d 896 (1960), 83 A.L.R.2d 1026, cert. denied 365 U.S. 853, 81 S.Ct. 818, 5 L.Ed.2d 817 (1961); and 21 Am.Jur.2d, Criminal Law, Rights of Accused § 219, p. 258.

It is now held in most jurisdictions, however, that the accused may waive any rights in which the public does not have an interest—or which are not against public policy. 21 Am.Jur.2d, Criminal Law, supra, at page 258, citing: *State v. Vanella*, 40 Mont. 326, 106 P. 364 (1910); *State v. Osborne*, 54 Or. 289, 103 P. 62 (1909); *State ex rel. Lea v. Brown*, 166 Tenn. 669, 64 S.W.2d 841 (1933), 91 A.L.R. 1246, cert. denied 292 U.S. 638, 54 S.Ct. 717, 78 L.Ed. 1491; *State v. Dehler*, 257 Minn. 549, 102 N.W.2d 696 (1960), 89 A.L.R.2d 496; *Harriet Cotton Mills v. Local No. 578, Textile Workers Union*, 251 N.C. 218, 111 S.E.2d 457 (1959), 79 A.L.R.2d 646, cert denied 362 U.S. 941, 80 S.Ct. 806, 4 L.Ed.2d 770 (1960); and *Schick v. United States*, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904).

It is said in *Schick*, supra:

" . . . When there is no constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy. Authorities in the state courts are in harmony with this thought. In *Commonwealth v. Dailey*, 12 Cush. 80, the defendant in a misdemeanor case waived his right to a full panel and con-

sented to be tried by eleven jurors, and this action was sustained by the supreme court of Massachusetts. Chief Justice Shaw, delivering the opinion of the court, said (p. 83): 'He may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court.' The same doctrine was laid down in *Murphy v. Commonwealth*, 1 Met. (Ky.) 365; *Tyra v. Commonwealth*, 2 Met. (Ky.) 1, and in *State v. Kaufman*, 51 Iowa, 578, 2 N.W. 275. In *Connelly v. State*, 60 Ala. 89, a statute authorizing the waiver of a jury was sustained. The same rule was made in *State v. Worden*, 46 Conn. 349, which was a case of a felony. See also *People v. Rathbun*, 21 Wend. 509, 542." 195 U.S. at 72, 24 S.Ct. at 828.

In Justice Chamliss' concurring opinion in *State ex rel. Lea v. Brown*, supra, he says:

"A party may waive any provisions of a contract, statute, or constitution intended for his benefit. Bouvier & Anderson's Law Dictionaries. These and other textbook authorities follow the language of Mr. Justice Strong in the early case of *Shutte v. Thompson*, 15 Wall. 151, 159, 21 L.Ed. 123, 'a party may waive any provision, either of a contract or of a statute, intended for his benefit.' . . ." 64 S.W.2d at 848.

As we have said, the right to a common-law jury trial in Wyoming is a right which belongs to the defendant and which may be waived with the approval of the court and the consent of the State. *First National Bank v. Foster*, supra; Rule 24(a), W.R. Cr.P., supra; and Rule 32(a) and (d), W.R. Cr.P., supra.

*Waiver of Other Constitutional Rights*

■ Our holding herein will be consistent with the general rule that all rights and privileges designed for the benefit of the defendant may be waived, so long as there is no violation of public policy and the public's interests are not thereby jeopardized.

■ Accepted examples of the defendant's waiver privilege may be found in the following: The constitutional right to speedy trial is a personal one and may be

waived. 21 Am.Jur.2d, Criminal Law § 253, Waiver of Right, p. 289.[12] Some courts regard defendant's presence at trial as waivable.[13] The article, cited at fn. 13, supra, says in part, at page 313:

". . . On behalf of the opposite rule, it has been argued that the right is essentially for the benefit of the accused and that since the accused, by pleading guilty, can waive any trial at all and subject himself to the severest penalty which might follow a trial, he should be able to waive any mere privilege on the trial that is designed only to aid him in shielding himself from such result. Statutes declaring that the accused must be present during the trial, or that he cannot be tried unless personally present in a felony case, have sometimes been construed as imposing an affirmative requirement which cannot be dispensed with by the accused or his counsel, but other courts have regarded them as granting or confirming a right which defendant is nevertheless free to relinquish. . . ."

 The accused may waive his right to be present at the impaneling of the jury. See 26 A.L.R.2d, § 19, p. 786. He may waive his rights to effective assistance of counsel.[14] He may waive his right to receive the service of a copy of an indictment or information since these are privileges, and statutes requiring such service are not jurisdictional.[15] The accused may waive his right to be confronted by witnesses against him, since this is a personal privilege.[16] The constitutional guarantee against compulsory self-incrimination is, like other privileges, waivable. 21 Am.Jur.2d, Criminal Law § 357.[17]

There are other and numerous privileges guaranteed to the defendant which the de-

**12.** The encyclopedia cites the following for this proposition:
"*Randolph v. State*, 234 Ind 57, 122 N.E.2d 860, cert den 350 US 889, 100 L ed 783, 76 S Ct 145; *Commonwealth v. Hanley*, 337 Mass 384, 149 NE2d 608, 66 ALR2d 222, cert den 358 US 850, 3 L ed 2d 85, 79 S Ct 79. *Annotation*: 129 ALR 574, s 57 ALR2d 307, § 3." See additional case authority in the supplement.

**13.** See 21 Am.Jur.2d, Criminal Law § 279, p. 312, citing:
"*Miles v. State*, 222 Ind 312, 53 NE2d 779. *Annotation*: 23 ALR2d 473, § 6 (presence at rendition of felony verdict); 26 ALR2d 786 § 19 (presence at impaneling or selection of jury).
"The power of the court to proceed does not depend on the presence of the accused, since only his right to be present is guaranteed. *Davidson v. State*, 108 Ark 191, 158 S.W. 1103.
"The right to be present at the trial, whether granted by constitution, statute, or common law, may be waived. *Thomas v. State*, 117 Miss 532, 78 So 147," with additional case authorities in supplement.

**14.** See 21 Am.Jur.2d, Criminal Law § 316, p. 343, citing:
"*Escobedo v. Illinois*, 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758; *Moore v. Michigan*, 355 U.S. 155, 2 L.Ed.2d 167, 78 S.Ct. 191; *Johnson v. Zerbst*, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019; *Re Baird*, 150 Cal.App.2d 561, 310 P.2d 454, 68 ALR2d 628; *People v. Cox*, 12 Ill.2d 265, 146 N.E.2d 19, 68 A.L.R.2d 1134; *Carpentier v. Lainson*, 248 Iowa 1275, 84 N.W.2d 32, 71 A.L.R.2d 1151. *Annotation*: 20 A.L.R.2d 1245, 1246, § 3; 80 A.L.R.2d 1087; 84 L.Ed. 392; 2 L.Ed.2d 1650, s. 9 L.Ed.2d 1262."
See later cases in supplement.

**15.** See 21 Am.Jur.2d, Criminal Law § 327, p. 354, citing:
"*Segurola v. United States*, 275 U.S. 106, 72 L.Ed. 186, 48 S.Ct. 77; *Logan v. United States*, 144 U.S. 263, 36 L.Ed. 429, 12 S.Ct. 617; *Davidson v. State*, 108 Ark. 191, 158 S.W. 1103."

**16.** See 21 Am.Jur.2d, Criminal Law § 344, p. 373, citing:
"*Diaz v. United States*, 223 U.S. 422, 56 L.Ed. 500, 32 S.Ct. 250; *Re Baird*, 150 Cal.App. 561, 310 P.2d 454, 68 A.L.R.2d 628; *Shular v. State*, 105 Ind. 289, 4 N.E. 870; *State v. Logan*, 344 Mo. 351, 126 S.W.2d 256, 122 A.L.R. 417; *State v. Vanella*, 40 Mont. 326, 106 P. 364; *Garcia v. State*, 151 Tex.Crim. 593, 210 S.W.2d 574. *Annotation*: 100 A.L.R. 480, 483 (waiver of right by brief voluntary absence from courtroom)."
See later cases in supplement.

**17.** The following authorities are cited:
"*State v. Sedam*, 62 Idaho 26, 107 P.2d 1065; *Allen v. State*, 183 Md. 603, 39 A.2d 820; 171 A.L.R. 1138; *State v. Gensmer*, 235 Minn. 72, 51 N.W.2d 680, cert. den. 344 U.S. 824, 97 L.Ed. 642, 73 S.Ct. 24; *Dykes v. State*, 232 Miss. 379, 99 So.2d 602; *State v. Sapp*, 356 Mo. 705, 203 S.W.2d 425; *People v. Shapiro*,

fendant may waive. To pursue a more detailed itemization of these waivable rights would serve no good purpose. The rule-of-thumb is, with certain exceptions, that any constitutional or statutory privilege inuring to the benefit of the defendant, which does not violate a public policy, may be waived. *Patton v. United States*, supra; and *Schick v. United States*, supra.

### Waivable Constitutional Rights in Wyoming

This court's opinions with respect to waiver of the defendant's constitutional rights square with the various majority opinions on the subject. Article 1, Section 10, of the Constitution of Wyoming, provides in part:

"*Right of accused to defend.*—In all criminal prosecutions the accused shall have the right to defend in person and by counsel, to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed. . . ."

 Among others, this court has approved waiver of the following defendant rights: We have held that where the defendant did not raise the defense of double jeopardy, it was waived. *Hutchins v. State*, Wyo., 483 P.2d 519 (1971); and *Peterson v. State*, Wyo., 586 P.2d 144 (1978). A Wyoming defendant may knowingly waive his right to refuse to testify on the ground of self-incrimination, *Clenin v. State*, Wyo., 573 P.2d 844 (1978), as well as his right to request counsel, *Raigosa v. State*, Wyo., 562 P.2d 1009 (1977); and *Jarrett v. State*, Wyo., 500 P.2d 1027 (1972). Right to speedy trial may be waived. *Cosco v. State*, Wyo., 503 P.2d 1403 (1972); and *Shafsky v. City of Casper*, Wyo., 487 P.2d 468 (1971).

Again, the list is long and incomplete but supportive of the general rule above an-

nounced that where a constitutional right is a privilege, personal to the defendant, it is capable of being waived.

We ask, then, if all of these rights and more can be waived—upon what ground can we say that the waiver of jury unanimity is so sacred that it cannot be added to the list? We perceive of none.

 We hold that the defendant has a qualified right to intelligently and voluntarily waive his right to a unanimous verdict, contingent only upon the consent of the court and the State, providing the waiver conforms strictly to constitutional standards. In setting these standards, we have a word of caution for Bench and Bar. The standards which we set for waiver of a unanimous verdict are finely drafted and will be strictly construed. This is so because, while conceding unanimity to be a qualified right of the defendant which he may forsake with the consent of the State and the court, we emphasize that the unanimous verdict is the defendant's right which can be dispensed with only when he voluntarily and intelligently waives it.[18] In setting these standards, we have taken into account the fact that the pressure upon the defendant and his counsel to waive this constitutional right when the court is confronted with the futility and expense of a hung jury is heavy and will—at times—be nearly impossible for defendant and his or her counsel to resist. We will, therefore, insist upon strict compliance with these standards in order that the spirit of jury unanimity, together with the free will of the defendant to make an informed and voluntary alternative choice, be preserved and honored. We will expect the choice to be informed and voluntarily made in an atmosphere free of sanction or the threat of sanction—either express or implied.

### Standards and Requirements for Accepting Less-Than-Unanimous Verdict

 We hold here, consistent with the court's right to subject waiver of constitu-

308 N.Y. 453, 126 N.E.2d 559, 51 A.L.R.2d 515; *State v. Jeane*, 35 Wash.2d 423, 213 P.2d 633. *Annotation*: 64 A.L.R. 1099."

See later cases in supplement.

**18.** See *State v. McKay*, supra.

tional rights to reasonable procedural regulations (*Singer v. United States*, supra), that where waiver of defendant's constitutional right to unanimity is at issue, we will (as we did in *Cardenas v. Meacham*, Wyo., 545 P.2d 632 (1976), where the defendant's change of plea was concerned) regard the waiver as void where, in addition to being consented to by the State and the court, it appears to not be voluntarily and understandingly entered into by the defendant. Further, there must be a *record* showing that *before the defendant's consent to a majority verdict is accepted*, the court has informed him or her of all of his or her rights as described herein; and the record must also reveal that the explanation was made and responses received from the defendant in a way that leaves no doubt concerning the defendant's understanding of his or her voluntary decision with respect thereto.

■ A verdict which is less than unanimous may be accepted by a trial judge in this state only upon the following conditions:

1. As in the past, the court will, in the first instance, instruct the jury that it will be required to return a unanimous verdict.

2. After deliberation, and only when the jury has informed the court that it is unable to reach a unanimous verdict, and only after all lawful efforts have been made to secure such verdict and the court finds itself with no alternative but to declare a mistrial, the court may receive a majority verdict according to the following procedure:

(a) When the court is convinced that the jury is unable to agree and a mistrial must otherwise be declared, the judge may state to counsel for the State and the defendant, in the presence of the defendant, that it will afford the parties the opportunity to consider waiver of a unanimous verdict if they desire that opportunity.

(b) Should the parties agree to receive a majority verdict, and assuming the court finds such a course to be in the best interest of all concerned, the judge may accept such verdict under the following conditions:

(c) The court may receive such a verdict, in which there are no more than two (2) minority votes, when, in the presence and with the understanding of the defendant, all conditions contained in these standards have been explained and accepted, and all exchanges among the court, defense counsel, defendant, and counsel for the State have been made a matter of record.

(d) Before accepting a majority verdict, the court, on the record, will orally inform the defendant, his counsel, and the counsel for the State of each of the matters contained in this Paragraph 2(d) and each of its subparagraphs.

In addition, and after such information is orally imparted to the parties and counsel, on the record, and when the court is convinced that the defendant, as well as counsel, have a full understanding of the matters thus explained, the parties will then enter into a written memorandum of understanding, with the approval of the court indicated thereon, to the effect that the parties have knowledge and understanding of all information contained in Paragraph 2(d) and its subparagraphs and that the parties and the court, for their respective parts, agree and consent to all conditions therein contained. The memorandum will *itemize in writing* each and every condition referred to in this Paragraph 2(d) and each of its subparagraphs, and all concerned will express in writing an acknowledgement of their understanding of and agreement with each item, namely:

(i) The defendant will represent that he understands that he possesses a constitutional right to insist upon a unanimous verdict and that he has been informed and understands that, should it be his desire, the court will, at this juncture, discharge the jury and declare a mistrial.

(ii) Defendant and all concerned will be informed and will acknowledge that the court represents that it does not know how the jury is divided, but, upon being polled, if the jury's division is such that there are more than two (2) jurors in the minority, the court *must* declare a mistrial.

(iii) The court will inform counsel and the defendant, and the defendant and all concerned will represent their understanding, that, if a mistrial is declared for any reason, the defendant will suffer no penalty as a consequence of such declaration; and the court will fully explain, and the defendant will indicate his understanding, that if a mistrial is declared, the defendant will again stand trial aided by a presumption of innocence.

(iv) The court will explain, and the defendant and counsel will acknowledge a full understanding of the proposition that, should it be defendant's desire that a mistrial be declared, the defendant will (unless he voluntarily changes his plea under the strictures provided for in such matters [19]) again stand trial, and, in such event:

(A) If the defendant has no funds with which to hire counsel, he will be furnished representation under appropriate rules of law, which the court will explain.

(B) Another trial judge will be assigned to the second trial if that is defendant's desire.

(C) Insofar as possible, the inability of the jury in the first trial to reach a verdict will not be revealed to the jury in the succeeding trial, and the second trial will be conducted as though the prior trial had not been held, and the defendant's decision to waive or not waive the unanimous verdict will in no manner be communicated to the jury in the succeeding trial.

(D) Should another trial be necessary, and should the defendant be found guilty, his sentence will not reflect any penalty whatsoever for his having insisted upon his constitutional right to a unanimous verdict in the first instance.

(E) The defendant's waiver decision will in no way affect any appellate rights of which he might be possessed, either by reason of the first or any succeeding trial.

Once the defendant and counsel for the State are so informed and have expressed their desires and understanding as above indicated to the effect that a majority verdict should be received, the court may recall the jury and receive its verdict under the conditions and standards set out above.

*Decision Under the Facts of this Case*

As has been noted, a majority verdict is acceptable only when the defendant has a full and complete understanding of all the ramifications of his agreement to waive his constitutional right to a unanimous verdict. In the instant matter, the trial judge was careful to inquire with respect to the intent of the defendant to waive his constitutional right and to accept a majority verdict. The court had no standards against which to fashion his inquiry, and few case decisions in this country to guide him.

According to the record, however, we do not find that this defendant has been adequately informed of his rights in a manner which permits this court to know that the waiver was entered into in a voluntary and informed manner. He was not, for example, told of the consequences of his refusal to insist upon a unanimous verdict as described in the standards hereinabove set out, and without such information we cannot assume that his decision to forsake his constitutional rights was intelligently and voluntarily come by. Additionally, we find indicated by the record an allusion to a discussion among court and counsel off the record. Since we are not informed of the context of this exchange, we deem this further reason to reverse and remand the case. It is always dangerous practice for a trial

---

**19.** See *Cardenas v. Meacham*, supra.

judge to act upon the basis of information obtained outside of and not incorporated into the record.

Reversed and remanded for a new trial or such other action as is not inconsistent with this decision.

RAPER, Chief Justice, files the following statement, in which ROONEY, Justice, joins:

I concur and join in the court's opinion. My only hesitancy has been with that part of the conditions under which a verdict may be accepted when it is less than unanimous, set out as 6(B) requiring the trial judge to inform the defendant that "[a]nother trial judge will be assigned to the second trial if that is defendant's desire."

It appears to me that we are amending Rule 23(d) and (e), W.R.Cr.P. by imposing another condition under which a trial judge may be peremptorily disqualified from presiding and thus violating our own rule of procedure. If the trial judge is biased or prejudiced against the defendant, then the regular procedure for disqualification for cause provided by Rule 23(e) should be followed. I cannot believe that a judge can be considered biased and prejudiced, per se, because he has been through one trial, which is the implication of this requirement.

It is not entirely clear to me wherein such a condition to waiver of a unanimous verdict has any relevancy. To change judges following a mistrial, in the absence of bias or prejudice, in fact deprives the system of justice of the best fitted judge to go into a second trial. While something new always shows up in a second trial, most of the new trial is a replay of the first. The trial judge's acquaintanceship with the evidence to be produced has removed most of the surprises, has created an awareness of possible pitfalls, and the danger of hasty rulings is lessened. A new judge will be required to prepare himself from scratch, perhaps hold a more extensive pretrial conference than otherwise would be necessary, must possibly leave his own district which involves time lost and the expense of travel.

I entertain some reservations as to the useful purpose of the requirement.

ROONEY, Justice, specially concurring.

I concur in the result reached by the majority opinion, and I appreciate the effort made by it in establishing standards and requirements for accepting less-than-unanimous verdicts. However, I believe the majority opinion has improperly extended the holding of the two cases which form the very cornerstone of the opinion; and that the opinion is, thus, in error. I do not wish to join in judicially changing the policy relative to unanimous verdicts in criminal cases as now flatly and plainly stated in the rules promulgated by us.[1]

## LESS–THAN–TWELVE DISTINCTIONS

The distinction between a jury which consists of less than twelve persons and one in which a verdict is allowed to be made by less than the number of persons on the jury must be kept in mind. Many of the cases cited and quoted from in the majority opinion have to do with whether or not a jury of less than twelve persons is proper and not with whether or not a less-than-unanimous verdict is proper. A waiver of a jury in toto differs from a waiver of a jury of twelve persons, and both differ from a waiver of the requirement for a unanimous verdict.

### *APODACA* AND *JOHNSON* DISTINGUISHED

The two cases having to do with a less-than-unanimous verdict and upon which the majority opinion relies for the proposition that the Sixth Amendment of the United States Constitution is not offended through application of the Fourteenth Amendment thereto by state provisions imposing less-than-unanimous verdicts in criminal jury trials are *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) and

---

1. Rule 32(a), W.R.Cr.P. provides: "The verdict shall be unanimous. It shall be returned by the jury to the judge in open court."

*Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).[2] It is important to recognize that the court was considering in each case, a question of whether or not *state constitutional provisions* were violative of the United States Constitution.[3] It decided that they were not.

This is a far different determination than a determination that a criminal defendant may waive the requirement of a unanimous verdict. He may waive it from the standpoint that such does not violate United States constitutional provisions, but such waiver may nonetheless require an authorization or an enabling provision at the state level before it can be made. The majority opinion points to the right to waive other protected rights (defense of double jeopardy, refusal to testify on the grounds of self-incrimination, to request counsel, to speedy trial) as indicative of the application of "the general rule that all rights and privileges designed for the benefit of the defendant may be waived, so long as there is no violation of public policy and the public's interests are not thereby jeopardized." It then asks: "[I]f all of these rights and more can be waived—upon what ground can we say that the waiver of unanimity is so sacred that it cannot be added to the list?"

### PUBLIC POLICY

The question is answered and the ground is found in the general rule itself. A waiver of a unanimous verdict is violative of public policy and does prejudice the public's interest.

"* * * [T]he term 'public policy' of a State is nothing more or less than the law of the State, as found in its constitution and statutes and when they have not directly spoken, then in the decisions of the courts and in the regular practice of government officials. * * *" *Higgins v. Nationwide Mutual Insurance Company*, 50 Ala.App. 691, 282 So.2d 295, 298 (1973).

"* * * Fundamental public policy is declared in the Constitution. If not there declared then public policy is to be looked for in legislative enactments, which are conclusive unless they contravene some provision of the Constitution. * * *" *District Grand Lodge No. 25 Grand United Order of Odd Fellows v. Jones*, 138 Tex. 537, 160 S.W.2d 915, 920 (1942).

Contrary to the constitutions of Oregon and Louisiana, our constitution does not speak directly to the matter. Article 1, § 9 of the Wyoming Constitution provides in part:

"The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law. * * *"

**2.** These cases held that the constitutional provisions of the two states which authorize the predication of guilt on a jury vote of at least nine of twelve or ten of twelve does not result in a dilution of the standard of reasonable doubt; does not result in a systematic exclusion of a minority element from a jury panel and thus preclude a panel reflecting a cross section of the community; and does not result in "invidious discrimination" by mandatory unanimous verdicts in capital and five-man jury cases.

**3.** Article I, § 11 of the Oregon Constitution reads in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; * * * provided, however, that any accused person, in other than capital cases, and with the consent of the trial judge, may elect to waive trial by jury and consent to be tried by the judge of the court alone, such election to be in writing; provided, however, that in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise * * *." Article VII, § 41 of the 1921 Louisiana Constitution reads in part:

"* * * Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict."

In 1900, this court held legislation to be unconstitutional which authorized a verdict by three-fourths of the jury members. In doing so, it said that "[t]he essential and substantive attributes or elements of jury trial are, and always have been, number, impartiality, and unanimity" and that:

"But there is no specific mention in the section or anywhere in the constitution of the third essential of unanimity. Is it, then, to be deemed a matter unprovided for, a right not preserved, leaving the legislature at full liberty to enact such laws upon the subject as it may deem proper, unrestrained by the constitution? We do not think so. * * *" *First National Bank of Rock Springs, Wyo. v. Foster*, 9 Wyo. 157, 164, 61 P. 466, 467 (1900).

Now, I recognize that waiver of a right is a concept other than that referred to in such quotations. However, the element of public policy, so essential to a valid waiver, is emphatically declared therein. The majority opinion recognizes the necessity for the prosecution and the court to consent to the waiver. This recognition is an acknowledgment of a public aspect. If the legislature cannot change the unanimity attribute of the jury, where does the prosecution or court obtain the power to do so?

Beyond that, the legislature has seen fit to establish public policy as requiring a unanimous verdict. Section 1–11–210, W.S. 1977 provides:

"The jury may be discharged by the court on account of the sickness of a juror or any accident or calamity requiring its discharge, or by consent of both parties or after the jurors have been kept together *until it appears there is no probability of their agreeing.*" (Emphasis supplied.)

Section 1–11–212, W.S.1977 provides in pertinent part:

"*When the jurors agree* upon their verdict, it shall be reduced to writing and signed by the foreman. * * *" (Emphasis supplied.)

Section 1–11–213, W.S.1977 provides:

"*If a jury disagrees, or if when the jury is polled a juror answers in the negative,* or if the verdict is defective in substance, the jury shall be sent out again for further deliberation and either party may require the jury to be polled by the clerk or court asking each juror if it is his verdict." (Emphasis supplied.)

Again, waiver is not specifically addressed, but the tenor of the enactment and the fact that waiver is not addressed reflect the public policy relative thereto as intended by the legislature, i. e., that verdicts *shall be* unanimous, and waiver is not possible.

If more need be said in this respect, public policy was flatly set forth in the Rules of Criminal Procedure adopted by this court. Rule 32(a) thereof provides in part: "The verdict shall be unanimous." There are no exceptions set forth relative to waiver or otherwise. Rule 32(d), W.R.Cr.P. provides for a poll of the jury and states:

" * * * If upon the poll there is not *unanimous* concurrence, the jury may be directed to retire for further deliberations or may be discharged." (Emphasis supplied.)

If public policy relative to a unanimous jury *could* be changed judicially, it should be done by rule change, with usual input from the rules committee, and not by decree. Properly, however, any change in this long-standing policy should be by constitutional amendment. The holdings of *Apodaca* and *Johnson* would then apply. Under the present constitutional, statutory, and judicial language, the Wyoming public policy is the same as is federal public policy. And such waiver cannot be made in federal cases.

" * * * [T]he unanimous verdict requirement, with its deep roots in federal jurisprudence and its clear expression in the unequivocal command of Rule 31(a), should be observed in every trial of a crime in federal court. * * *" *United States v. Scalzitti*, 3rd Cir. 1978, 578 F.2d 507, 512. See *Andres v. United States*, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948).

The requirement is founded in the Sixth Amendment, not only in Rule 31(a), F.R.

Cr.P. *United States v. Morris*, 10th Cir. 1979, 612 F.2d 483. Our Rule 32(a), W.R. Cr.P. is the exact language of Rule 31(a), F.R.Cr.P., i. e., "[t]he verdict shall be unanimous." Our situation, historically, philosophically and rationally identifies our public policy with that of the federal government rather than with that of Louisiana and Oregon, i. e., states with constitutional provisions establishing a ten-to-two and nine-to-three verdict as their public policies. Obviously, the presence of these constitutional provisions are the distinctive causation for the *Apodaca* and *Johnson* opinions being contrary to the law resulting from application of the Sixth Amendment to federal cases.

## RATIONALE

The propriety of requiring a unanimous verdict is founded on more than custom. The opinions in *Apodaca* and *Johnson* were five to four. The majority of one was accomplished by virtue of a specially concurring opinion of Justice Powell, who stated at page 1641 of 92 S.Ct. that: " * * * I see no constitutional infirmity in the provision *adopted by the people of Oregon. It is the product of a constitutional amendment, approved by a vote of the people in the State * * *.*" (Emphasis supplied.)

Justice Blackmun, as one of the five majority justices, stated in his concurring opinion to the *Apodaca* case at page 1635 of 92 S.Ct.:

"I join the Court's opinion and judgment in each of these cases. I add only the comment, which should be obvious and should not need saying, that in so doing I do not imply that I regard a *State's* split-verdict system as a wise one. *My vote means only that I cannot conclude that the system is constitutionally offensive. Were I a legislator, I would disfavor it as a matter of policy.* Our task here, however, is not to pursue and strike down what happens to impress us as *undesirable legislative policy.*" (Emphasis supplied.)

Of course, the minority opinions in these two cases take issue with the determination in the majority opinion that the concept of reasonable doubt is not diluted and that the concept of jury representation of a cross section of the community is not violated. For example, Justice Douglas, at page 1650 of 92 S.Ct.:

"Proof beyond a reasonable doubt and unanimity of criminal verdicts and the presumption of innocence are basic features of the accusatorial system. What we do today is not in that tradition but more in the tradition of the inquisition. Until amendments are adopted setting new standards, I would let no man be fined or imprisoned in derogation of what up to today was indisputably the law of the land."

And Justice Brennan at page 1651 of 92 S.Ct.:

"It is in this context that we must view the constitutional requirement that all juries be drawn from an accurate cross section of the community. When verdicts must be unanimous, no member of the jury may be ignored by the others. When less than unanimity is sufficient, consideration of minority views may become nothing more than a matter of majority grace. In my opinion, the right of all groups in this Nation to participate in the criminal process means the right to have their voices heard. A unanimous verdict vindicates that right. Majority verdicts could destroy it."

And Justice Marshall at page 1653 of 92 S.Ct.:

" * * * It should be emphasized, however, that the fencing-out problem goes beyond the problem of identifiable minority groups. The juror whose dissenting voice is unheard may be a spokesman, not for any minority viewpoint, but simply for himself—and that, in my view, is enough. The doubts of a single juror are in my view evidence that the government has failed to carry its burden of proving guilt beyond a reasonable doubt. * * "

## CONCLUSION

I cannot join my fellow justices in abrogating the long-standing policy of unani-

mous verdicts in criminal jury trials. I believe such policy is implicit in the language of the Wyoming Constitution and in subsequent legislative enactments. The fact that the United States Supreme Court has not (as of this date) struck down as violative of the United States Constitution the constitutional provisions of two other states which set the policies in those states to authorize non-unanimous verdicts is of no materiality or relevance to Wyoming's position.

I would reverse this case *only* on the ground that Rule 32(a), W.R.Cr.P., which requires a unanimous verdict, was not enforced by the district court.