DYKES *v.* STATE

No. 40657 January 6, 1957 99 So. 2d 602

*Pittman* & *King,* Hattiesburg, for appellant.

*G. Garland Lyell, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

ETHRIDGE, J.

Appellant Louis Milton Dykes was convicted in the Circuit Court of Perry County of the murder of his wife, Evelyn Shannon Dykes, and, the jury being unable to agree as to his punishment, he was sentenced to a life term in the state penitentiary. In an earlier trial, appellant was acquitted of a charge of murdering his father-in-law, S. E. Shannon, on the same occasion.

I.

This case will have to be reversed and remanded for a new trial, so our comments with reference to the facts will be limited to those pertinent to the issues of law raised on this appeal. Defendant and his wife, Evelyn Shannon Dykes, were married in 1940. At the time she was killed by him, April 13, 1956, they had three children. In the latter part of December 1955 defendant and Evelyn had separated, and at the time of the killing the two youngest children, a boy 10 years of age and a girl 12, were living with some of Evelyn's relatives in Florida. The oldest girl, Anita, 14 years of age, and her mother had been living since the separation with Evelyn's father, S. E. Shannon, in Richton, Mississippi. After the separation defendant went to Florida and worked for several months.

On April 9, 1956, appellant returned to Mississippi. On April 10 Evelyn filed a suit for divorce against him. The testimony warranted the jury in finding that, when he was served with a summons in the divorce suit, defendant was upset and angered. On Wednesday before the killing on Friday defendant purchased a pistol and bullets, because, he said, his father-in-law, Mr. Shannon, had told him to keep away from his house and daughter.

At any rate, early Friday morning, April 13, around 5:45 o'clock, Dykes went to his father-in-law's house with the loaded pistol in his jacket pocket. When Mr. Shannon unlocked the front door shortly thereafter, Dykes walked in and demanded to see Evelyn. She came out, and while she was talking with him in the living room, the defendant's version is that Evelyn was standing to his left. Shannon told him that he would go get his gun and stop him from seeing his daughter and grandchildren. Shannon then started through the dining room into a hall way leading down to where defendant remembered that Shannon had previously kept a gun. Defendant told Shannon to stop, shot in front of him once, and on the second shot defendant fired at Shannon, he said, but Evelyn had come around between them without him knowing it, and she was accidentaly shot by him. Dykes said that he then stepped over a little to his left and fired two more times at Shannon, hitting him behind the right ear and killing him.

On the other hand, the testimony for the State tended to show that defendant intentionally murdered his wife Evelyn. Their daughter Anita did not see the incident. She was frightened and hiding under a bed in her mother's bedroom. She testified that defendant accused her mother of giving the children away to everybody, and told her to "keep out of this", his argument with Shannon. Shortly thereafter Anita heard a shot and then three more shots. Defendant then came in the bedroom, and got Anita from under the bed. She asked her father if he was going to kill her too, and he replied that, if he had known she was there, he would not have killed her mother, "that he hated to kill her with a lie on her lips". Other testimony in support of the State's theory of an intentional killing was that with reference to defendant's apparent anger at being served with a summons in the divorce suit, his prior purchase of the pistol and bullets, his entry into the home without being invited, the loca-

tion of her body in the room with the fatal shot behind her right ear, his oral and written statements made to highway patrolmen, and two other statements made by him subsequent to the killing.

Without discussing further the testimony pro and con, we think that the State clearly made out an issue for the jury as to whether defendant shot his wife with an intentional design to kill her. On the other hand, defendant's theory of the killing was that it was an accident, wholly unintentional on his part. So defendant was not entitled to his requested peremptory instruction, and there was no error in overruling his motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence.

## II.

■■■ However, in addition to submitting to the jury the issue of whether defendant intentionally murdered his wife, the State also obtained a number of instructions which submitted to the jury the issue of whether defendant's killing of Mr. Shannon was in necessary self defense. The instructions in question for the State were such as to permit the jury to find that defendant did not kill Shannon in necessary self defense, but that he murdered him, although this issue had previously been adjudicated and determined by the jury in defendant's prior trial upon the charge of murdering Shannon. And in that trial he was acquitted on that issue. In fine, in addition to the theory of an intentional killing of Evelyn, the trial court submitted also to the jury another theory for the State, namely, if the jury found that defendant had murdered Shannon, and in doing so accidentally killed Evelyn, then the malicious intent as to Shannon was transferred to the person whose death was accidentally caused, Evelyn. Since this issue had already been adjudicated by the jury in the acquittal of defendant on the charge of murdering his father-in-law, it was error to submit it in this prosecution. So appellant complains of

the giving of five instructions to the State and the refusal of five instructions requested by him.

The State's instructions may be summarized by saying that they advised the jury that, in order to justify a homicide on the plea of self defense, there must be an immediate danger to the slayer of being killed or of receiving great personal injury, and the danger must be such as to lead a person reasonably to believe that the killing was necessary to prevent the deceased from killing him or doing him some great bodily harm. Another stated that a person who enters another person's home uninvited or against his wishes is a trespasser, and the owner has the right to force the trespasser to leave, and, if the jury believed that defendant entered the home in this way carrying with him a loaded pistol in the presence of Mr. Shannon, then the latter had a legal right to force him to leave. Another instruction stated that, even though the jury believed that defendant acted in self defense, he would not be entitled to use any more force than was reasonably necessary to protect his life, and, if he used unreasonable force, then it was the jury's duty to find the defendant guilty. It was stated that a man has a legal right to keep a pistol in his home for the protection of his and his family's life and property.

Other instructions were granted the State but not argued by appellant in his brief, submitting also the theory of whether defendant was acting in self defense. For example, one told the jury that, where there is an intent to kill, the accidental killing of a person other than the one intended is murder; "and in such a case the malicious intent of the unlawful act directed toward one person is transferred to the other person and characterizes the result; and if you believe from the evidence in this case beyond a reasonable doubt that the defendant wilfully, unlawfully, feloniously and of his malice aforethought intended to kill some other person and in attempting to do so accidentally killed Evelyn Shannon

Dykes, then it would be your sworn duty to find the defendant guilty as charged.''

■■ Appellant asked for and the trial court refused five instructions, of which action he complains. One of these advised the jury that, if it believed defendant had been acquitted of the murder of his father-in-law, and at the same time he shot Mr. Shannon he was acting in necessary self defense, and Mrs. Dykes without his knolwedge stepped into the line of fire and was accidentally killed, then the defendant is not guilty. Another instruction dealt with the proposition that, where a bystander is accidentally killed while defendant is shooting at another, the question of his guilt will be determined with reference to his right with respect to the person at whom the shot was aimed. It further stated that the evidence is uncontradicted that defendant was acquitted of the murder of Mr. Shannon, and if the jury believed that Mrs. Dykes stepped into the range of a bullet fired by defendant at the time he was shooting at Shannon in self defense, then it would be the jury's duty to find defendant not guilty.

■■ These instructions raise a problem related to the doctrine of transferred intent. Where there is an express intent to kill or do grievous bodily harm directed toward one person and another is killed unintentionally by the act, it is murder at common law. It is said that the reason for this result is the law transfers the express intent to kill from the intended victim to the third person who is slain. There is some difficulty in rationalizing this rule, since there is no actual intent to kill the third person. However, the slayer had an express intent to kill a human being, and the result of his intention is of the same class and severity as he intended. Moreland, The Law of Homicide (1952), pp. 19-20, 256-257. The transferred intent doctrine is well-established in the common law and in Mississippi. 26 Am. Jur., Homicide, Sec. 35; 40 C. J. S., Homicide, Sec. 18; Anno. 18 A. L. R. 917

(1922); Ross v. State, 158 Miss. 827, 131 So. 367 (1930); Morgan v. State, 24 So. 2d 744 (Miss. 1946).

▮▮▮ Conversely, the transferred intent doctrine does not apply where it appears that the accused, in shooting or striking at one person with intent to kill, unintentionally kills another, *if* the accused has previously been acquitted of the death of the person at whom he was shooting or striking. Such acquittal will bar a subsequent prosecution of the accused for the murder of the other person, *unless* the killing of the other person was not accidental but was an independent separate offense arising out of the transaction. In such event the accused may be successively prosecuted for the two offenses. Anno., 2 A. L. R. 606, 608 (1919); 26 Am. Jur., Homicide, Sec. 180; Spannell v. State, 83 Tex. Crim. Rep. 418, 203 S. W. 357, 2 A. L. R. 593 (1918). That is the principle upon which the State must proceed in this case. In brief, the same act or group of acts may constitute two or more distinct offenses, different in kind as well as in degree, and in such case the State may elect to prosecute for either offense or the offender may be indicted and punished for each one separately. 22 C. J. S., Criminal Law, Sec. 9. This principle is discussed in detail with citation of earlier Mississippi cases in Burton v. State, 79 So. 2d 42 (Miss. 1955). See also Teat v. State, 53 Miss. 439 (1876).

Jones v. State, 66 Miss. 380, 6 So. 231 (1889), is in point on the instant question. Jones was engaged in a fight with Lloyd. During this fight Thomas rushed in, and both of them were struck and injured by Jones. There was some evidence the fight occurred at night, visibility was poor, and Jones struck Thomas thinking he was Lloyd. Jones was first tried and acquitted for assault and battery with intent to kill Lloyd. He was then tried for assault and battery with intent to kill Thomas. He offered the record of his acquittal in the prosecution by the State for the assault upon Lloyd.

The State's objection to this was sustained. The State was given an instruction that if, while defendant was fighting with Lloyd he was trying to stab him with a deadly weapon, with intent to kill, and if Thomas ran in as a peacemaker, and the defendant cut and stabbed Thomas, believing it was Lloyd, "and that Thomas was making no hostile demonstrations towards the defendant, then he was not justified, even though he may have believed it was Lloyd".

Jones was convicted of simple assault, but on appeal the judgment was reversed and the cause remanded. The court said that so long as the State confined the issue to the independent act of the assault upon Thomas, it was incompetent for defendant to introduce in evidence the record of his acquittal upon the charge of an assault upon Lloyd. However, the quoted instruction submitted to a jury for the second time the issue, of whether Jones struck Lloyd in self defense, or with an intent to kill him, and if the latter, the intent was transferred to the assault upon Thomas. Jones having been acquitted of the assault on Lloyd, "an acquittal under the indictment for the proper offense, bars a subsequent prosecution for any of its ingredient offenses." The former acquittal was "conclusive evidence of the fact that the accused was not guilty of any offense by reason of any assault or assault and battery upon Lloyd." Hence defendant, because of his prior acquittal as to Lloyd, "is protected against a conviction based upon any violence used against Lloyd, or against another whom he injured believing him to be Lloyd."

The parallel between Jones v. State and the present case is manifest. In *Jones* the State was precluded from submitting again to a second jury, after a prior acquittal, the question of whether defendant hit Lloyd intending to kill him and then accidentally injured Thomas. His acquittal as to Lloyd precluded the State from again submitting that issue to a jury, on the theory of a transference of a wrongful intent to Thomas.

■■ ■ In the present case the State also is precluded by the prior acquittal of defendant on the charge of murdering his father-in-law from again submitting to the jury the question of whether defendant intentionally killed Shannon not in necessary self-defense. The record of his former acquittal is conclusive evidence of the fact that he was not guilty of any offense in killing Shannon, because it was a justifiable homicide. So the trial court improperly submitted to the jury this issue. Anno., 2 A. L. R. 606 (1909) ; 26 Am. Jur., Homicide, Sec. 180. It was error to give the State the five instructions of which appellant complained, and any other instructions submitting again the issue of whether defendant was acting in self defense in killing Mr. Shannon. It was also error to refuse appellant the five instructions referred to above and identified in appellant's brief and assignment of errors.

On a retrial of this case, the State's instructions should submit to the jury the issue of whether defendant intentionally murdered his wife, and an incidental factor would be that manslaughter could be comprehended within the greater charge of intentional killing. The evidence warranted the jury in finding that defendant shot Evelyn with the deliberate design to kill her. Whether or not that intent was the cause of her death should be the issue submitted to the jury on a new trial. Of course, defendant will have the right to again submit to another jury his defense that she was accidentally killed. These comments do not preclude either the State or the defendant from introducing evidence showing all of the surrounding circumstances, including the affray with Mr. Shannon, which are closely connected and related factually to the shooting of Mrs. Dykes.

■■ ■ Under the peculiar circumstances of this case, the defendant was entitled to offer in evidence the verdict of the jury acquitting him of the charge of murder of his father-in-law. Although he is being tried on the issue of an alleged independent act of murder of his wife,

that prior verdict of acquittal is relevant to the defense, which is that he accidentally and unintentionally shot his wife while acting in self defense against his father-in-law.

### III.

Before the trial defendant filed a plea of immunity from prosecution. After he was arrested but before he was formally charged with murder, a coroner's inquest was held, at which defendant was sworn as a witness and testified as to his version that he accidentally killed Evelyn while shooting in self defense at Mr. Shannon. Miss. Constitution Sec. 26 provides ''in all criminal prosecutions the accused . . . shall not be compelled to give evidence against himself''. The plea also set up the 5th and 14th Amendments to the United States Constitution, and averred that five members of the coroner's jury and one arresting officer who heard defendant testify before the coroner's jury appeared before the grand jury and testified; and that this grand jury returned the indictment. So it was charged that the indictment was illegal and void as in violation of his privilege not to incriminate himself.

██ The circuit court was correct in overruling this plea. The constitutional protection applies to the use of such evidence in criminal prosecutions. The trial court held that no evidence pertaining to testimony given by defendant before the coroner's jury was admissible in the trial on the merits. No evidence was offered in this case to show what defendant testified before the coroner's jury. ██ Moreover, appellant did not object to testifying before the coroner's jury, and did not claim any privilege against self incrimination. He was asked whether he would like to tell about the incident, and the overwhelming weight of the evidence shows that he then proceeded voluntarily to give his version of the incident. Hence the record on the hearing of the plea of immunity shows that defendant testified before the coroner's jury voluntarily. And in failing to claim the privilege, he waived it. Felder v. State, 108 Miss. 580,

67 So. 56 (1914); 58 Am. Jur., Witnesses, Secs. 94-96; 8 Wigmore Evidence, (3d ed. 1940) Secs. 2268, 2275.

 ██ Appellant also contends that the circuit court erred in overruling his plea of immunity because the indictment was illegal. Apparently five members of the coroner's jury, and one arresting officer who heard defendant testify before the coroner's jury, appeared before the grand jury which indicted him and testified. However, appellant did not properly raise this point. Code of 1942, Secs. 2450, 2449, require that objections to an indictment for defects dehors the record shall be taken by motion to quash the indictment, before the issuance of the venire facias in capital cases. Appellant did not comply with this requirement. Under Code Sec. 3901, the coroner is required to put in writing material evidence obtained in the hearing before the coroner's jury, and to certify it to the circuit court, manifestly for purposes of use by the grand jury. Moreover, none of the testimony by defendant before the coroner's jury, which was given voluntarily and without any claim of the privilege, thereby waiving the same, was used in the trial on the merits. So even if this point had been properly raised, it has no validity in view of our decision that the plea of immunity was correctly overruled by the trial court. Cf. 24 Am. Jur., Grand Jury, Secs. 10, 11; 38 C. J. S., Grand Juries, Sec. 6f, pp. 989-991; Miss. Code 1942, Sec. 1784.

Reversed and remanded.

*McGehee, C. J.*, and *Kyle, Arrington* and *Gillespie, JJ.*, concur.