## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 95-CT-00233-SCT

*KEITH DEWAYNE COHEN, a/k/a KELO*

*v.*

*STATE OF MISSISSIPPI*

### <u>ON PETITION FOR WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/95 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DARNELL FELTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | DECISION OF COURT OF APPEALS REVERSED - JUDGMENT AND SENTENCE OF TRIAL COURT REINSTATED-12/31/98 |
| MOTION FOR REHEARING FILED: | 1/29/99 |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Cohen was convicted of aggravated assault in the Circuit Court of Coahoma County. The appeal was duly filed and assigned to the Court of Appeals, which reversed the conviction finding that the trial court erred in refusing a requested defense instruction on accidental injury. On Petition for Writ of Certiorari filed by the State, we find the Court of Appeals majority to be in error, and accordingly reverse and reinstate the conviction and sentence of the trial court.

### FACTS AND PROCEDURAL HISTORY

¶2. Cohen was indicted and convicted for the shooting of Ginger Wright. He alleged as his defense that he was defending himself against an alleged attack by a third party, Tyrone Johnson, when he accidentally shot and struck the victim, Wright, an innocent bystander. At trial, he offered the following instruction, D-3,

which was denied by the trial court.

> The court instructs the jury that the shooting and injuring of another human being shall be excusable when committed by accident and misfortune while necessarily defending oneself. In this case if you shall find from the evidence, or have a reasonable doubt therefrom, that Keith Dewayne Cohen, while necessarily defending himself from any sudden or sufficient provocation by Tyrone "Pooh Pooh" Johnson, fired a pistol and accidentally and/or through misfortune shot Ginger Wright, then it is your sworn duty to find Keith Dewayne Cohen and Martin Washington not guilty.

¶3. Cohen contends that this instruction which he had submitted is based upon *Dykes v. State,* 232 Miss. 379, 99 So.2d 602 (Miss. 1957). In that case, the defendant had already been acquitted of the murder of his father-in-law against whom he was allegedly defending himself, and was then tried for the murder of his wife whom he claimed stepped into the line of fire and was accidentally killed.

¶4. The Court of Appeals majority found that the failure of the trial court to grant this requested instruction "though it may not be perfectly drawn" was reversible error inasmuch as the jury was not otherwise instructed on accidental injury, and the matter was remanded for new trial. We hold that Court of Appeals dissent was correct in its analysis and finding that the jury was adequately instructed by the other instructions granted by the trial court.

## DISCUSSION

¶5. Before addressing the merits of the case at hand, the Court will, on its own initiative, address first impression the State's right to file the Petition for Writ of Certiorari. M.R.A.P. 17 is virtually silent on the issue, and therefore the analysis must begin at Miss. Code Ann. (1972) § 99-35-103 which defines the limits of the State's right to appeal. That section provides that

> The state or any municipal corporation may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
>
> (a) From a judgment sustaining a demurrer to, or a motion to quash an indictment, or an affidavit charging crime; but such appeals shall not bar or preclude another prosecution of the defendant for the same offense.
>
> (b) From a judgment actually acquitting the defendant where a question of law has been decided adversely to the state or municipality; but in such case the appeal shall not subject the defendant to further prosecution, nor shall the judgment of acquittal be reversed, but the Supreme Court shall nevertheless decide the question of law presented.
>
> (c) From a ruling adverse to the state or municipality in every case in which the defendant is convicted and prosecutes an appeal; and the case shall be treated as if a cross appeal had been formally presented by the state. All questions of law thus presented shall be decided by the Supreme Court.[1]

*Id*. Furthermore, Miss. Code Ann. (1972) § 9-4-3 (1) and (2) provides;

> (1) The Court of Appeals shall have the power to determine or otherwise dispose of any appeal or other proceeding assigned to it by the Supreme Court.

**The jurisdiction of the Court of Appeals is limited to those matters which have been assigned to it by the Supreme Court.**

The Supreme Court shall prescribe rules for the assignment of matters to the Court of Appeals. These rules may provide for the selective assignment of individual cases and may provide for the assignment of cases according to subject matter or other general criteria. However, the Supreme Court shall retain appeals in cases imposing the death penalty, or cases involving utility rates, annexations, bond issues, election contests, or a statute held unconstitutional by the lower court.

(2) **Decisions of the Court of Appeals are final and are not subject to review by the Supreme Court, except by writ of certiorari.** The Supreme Court may grant certiorari review only by the affirmative vote of four (4) of its members. At any time before final decision by the Court of Appeals, the Supreme Court may, by order, transfer to the Supreme Court any case pending before the Court of Appeals.

*Id.* [emphasis added].

¶6. In this case, the Appellant, Cohen, brought the direct appeal, and his conviction was reversed and remanded. He does not stand acquitted, and more importantly, we find no rule statute, or constitutional provision which would limit the State's right to seek certiorari review of a Court of Appeals decision. M.R.A.P. 17(a) provides that:

A decision of the Court of Appeals is a final decision which is not reviewable by the Supreme Court except on writ of certiorari. Review on writ of certiorari is not a matter of right, but a matter of judicial discretion. The Supreme Court may grant a petition for writ of certiorari on the affirmative vote of four of its members and may, by granting such writ, review any decision of the Court of Appeals. Successive review of a decision of the Court of Appeals by the Supreme Court will ordinarily be granted only for the purpose of resolving substantial questions of law of general significance. [emphasis added].

¶7. Furthermore, this review is not available until a M.R.A.P. 40 motion for rehearing has been denied by the Court of Appeals. This Court has never placed any limitation on the State on the filing of these motions either before the Court of Appeals or before this Court. See *Shaw v. State,* 702 So.2d 386 (Miss. 1997) and *Ward v. State,* 480 So.2d 524 (Miss. 1985). Under our rules then, the function of certiorari review is akin to and serves essentially the same purpose as a motion for rehearing where a party believes that the Court of Appeals has made an error in law and/or the application thereof.[(2)]

¶8. The Florida Supreme Court at some point found itself asking the same question now under consideration by members of this Court, and that is, what, if any, limitation is there on the state regarding the filing of Petitions for Writ of Certiorari. In finding that the state had no special limitations upon it, the Florida court said:

The first question to be answered is whether the state has the right to seek certiorari from a decision of a district court in which that court in a criminal case rules adversely to the state and favorably to an accused. This question was raised by this Court. We requested the parties to file supplemental briefs on the question and they have done so.

There can be no doubt that this Court has the authority to entertain a petition for certiorari filed by the

state in a criminal proceeding if the requisite conflict of decisions exists. Article V, Section 4(2), *Florida Constitution, F.S.A.*, empowers this Court to review by certiorari 'any decision' of a district court of appeal which is in conflict with a prior decision of this Court or of another district court of appeals. There is nothing in the constitution which limits the authority of this Court to entertain such petitions by the state in criminal proceedings, nor is the right of the state to file such a petition in a criminal proceeding limited by this or any other provision of the constitution.

Therefore any limitation on the right of the state to apply to this Court for a petition for certiorari directed to a decision of a district court in a criminal proceeding must arise not out of any lack of authority in this Court to entertain such nor out of any constitutional restriction on the state, but rather out of some statutory limitation imposed on the state by the legislature.

We find no such limitation or restriction in the statutes of this state.

The defendant contends, first, that the constitutional provision authorizing this Court to review conflicting decisions of the district courts by certiorari is not self-enacting and must be effectuated by an implementing statute. This position is not tenable. See *Gray v. Bryant*, Fla.1960, 125 So.2d 846, 851, and *State ex rel. Attorney General v. Gleason*, 1868, 12 Fla. 190, 209.

The defendant further contends that Sec. 924.07, F.S.A., which limits the right of the state to appeal from decisions adverse to it in criminal proceedings, also limits the right of the state to take certiorari.

Unfortunately for the defendant the plain words of Sec. 924.07, F.S.A., do not support his contention. The statute deals only with direct appeals in criminal proceedings and clearly does not and was not intended to proscribe the authority of the state to seek either common law certiorari now exercised by the district courts or constitutional certiorari of the variety now exercised by this Court.

While the legislature cannot limit the constitutionally conferred authority of this Court to entertain petitions for certiorari, we have no doubt that it can restrict the state in seeking review by certiorari of adverse decisions in criminal cases just as it has limited its right to appeal through Sec. 924.07. But the fact is that as of now it has not done so and until it does the state has the same right to petition this Court for certiorari in criminal proceedings as does the defendant.

*State v. Harris*, 136 So.2d 633, 634-635 (Fla. 1962).

¶9. This is analogous to the situation here. A petition for certiorari review is not a direct appeal from a judgment of the lower court. Therefore, Miss. Code Ann. (1972) § 99-5-103 has little or no application (with exception of subsection (c) as previously mentioned). Since the legislature created the Court of Appeals and established that review of its decisions are discretionary by certiorari review of this Court without placing any limitations thereon seem to indicate, as it did to the Florida court, that the legislature did not intend to limit the State's right to Certiorari Review.

¶10. A decision from the New Mexico Supreme Court allowing review of certiorari petitions brought by the state went somewhat further. It found that it had three separate and distinct grants of jurisdiction: (1) the appellate jurisdiction; (2) the superintending control over inferior courts; and (3) original jurisdiction to be exercised by certain writs. In addressing this superintending jurisdiction that court stated that:

The superintending control over inferior courts does not limit this court to the promulgation of rules of

court which have for their purpose the regulation of matters of relatively minor importance, which merely govern the everyday routine of courts and enable them to act as such. * * * We are here concerned with the more important rule of adjective law governing the trial of lawsuits and furnishing the machinery by which litigants may secure effective enforcement of their substantive rights. * * *

Quoting from *People ex rel. Green v. Court of Appeals of Colorado*, 51 L.R.A. 111,(40 N.M. at 422--423, 60 P.2d at 662) that court stated:

'* * * 'The power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise. It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. It is unlimited, being bounded only by the exigencies which call for its exercise. As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted."

*State of New Mexico v. Gunzelman*, 512 P.2d 55, 59 (N.M. 1973) (overruled on other grounds). See also *State v. Moore,* 227 S.E.2d 241 (Ga. 1976) which held that the State could proceed on certiorari review in Georgia.

¶11. On the basis of the foregoing we find, absent a constitutional or statutory ban, there is no prohibition on the State's filing of a Petition for Writ of Certiorari.

¶12. We turn now to the merits of this case. When determining whether the jury was properly instructed, the Court has held that "jury instructions are to be read as a whole and no one instruction is to be taken out of context of the whole." *Mackbee v. State*, 575 So.2d 16, 34 (Miss.1990); *Jackson v. Griffin,* 390 So.2d 287, 290 (Miss.1980); *Alexander v. State,* 250 So.2d 629, 632 (Miss.1971). A court's jury instructions "will not warrant reversal if the jury was fully and fairly instructed by other instructions." *Collins v. State,* 594 So.2d 29, 35 (Miss.1992); *Laney v. State,* 486 So.2d 1242, 1246 (Miss.1986). *Williams v. State,* 667 So.2d 15, 24 (Miss. 1996). The trial court granted instructions S-1A and S-3, which this court finds adequate instructed the jury in this case. Instruction S-1A provided

The defendants, . . . and Keith Dewayne Cohen, a/k/a "Kelo", have been charged in and indicted with the crime of aggravated assault upon Ginger Wright.

If you believe from the evidence in this case beyond a reasonable doubt that:

On or about August 24, 1994, the defendants . . . , individually or while acting in concert with each other or aiding and abetting each other, recklessly cased serious bodily injury to Ginger Wright by shooting her with a firearm, and

Said shooting by the defendants, or either of them, was done under circumstances manifesting extreme indifference to the value of human life, and not in necessary self-defense,

then you shall find such defendant or defendant, as the case may be guilty of aggravated assault.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt as to either or both defendants, then you shall find such defendant or defendants, as the case may be not

guilty.

¶13. Furthermore, Judge Bridges, in his dissent to the Court of Appeals majority, was correct when he opined that

> A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence. *Jackson v. State*, 645 So. 2d 921, 924 (Miss. 1994). When dealing with an issue of a refused jury instruction, as we are here, the trial court is afforded considerable discretion, and our primary concern on appeal is that "the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it." *Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992) (citing *Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990)).

> The Mississippi Supreme Court has articulated the exact language which should be used in a self-defense instruction. *Robinson v. State*, 434 So. 2d 206, 207 (Miss. 1983), overruled in part on other grounds by *Flowers v. State*, 473 So. 2d 164, 165 (Miss. 1985). The "Robinson instruction" very clearly and comprehensively sets out the theory of self-defense. The court in Robinson dealt with the issue of an instruction offered by the State and granted by the trial court. The supreme court proposed that the following instruction, instead of the one offered in the trial of Robinson, should be used to present the self-defense theory to the jury:

> The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

*Id*.

¶14. Here, the trial court granted instruction S-3 which states:

> The court instructs the jury that to make an assault . . . justifiable on the grounds of self defense, the danger to such . . . defendants must be actual, present and urgent, or the . . . defendants must have reasonable grounds to apprehend a design on the part of Tyrone Johnson to do . . . them . . . some great bodily harm . . . . It is for the jury to determine the reasonableness of the grounds upon which the defendant or defendants act.

> This instruction properly stated the theory of self-defense presented at trial. Instruction S-3 is essentially identical to the Robinson instruction and, therefore, properly set forth the defendant's theory of self-defense. I do not agree with the majority's conclusion that the jury was left with only their intuition to decide this case. I firmly believe that the jury could have used S-3 to acquit Cohen if they had found that when he shot Ms. Wright while he was fairly defending himself. The facts, however, do not support this conclusion. It seems to me that the dispositive question in this case is whether Cohen was engaging in justifiable self-defense at the time he shot Ms. Wright. If he was then he should not be found guilty of a criminal act against Ms. Wright. If he was not engaging in justifiable

self-defense then his acts were criminal. Either conclusion could be reached using the instructions given by S-3. The only variables are the facts. The facts in our case are different from those in Dykes. The court in Dykes based its conclusions upon the fact that Dykes had been previously acquitted of the murder of his father-in-law. In the case sub judice, Cohen had not even been tried for assault against Tyrone Johnson.

¶15. *Dykes,* 232 Miss. 379, 99 So. 2d 602 (1957) upon which the contested instruction and the Court of Appeals majority relies, is easily distinguished both in issues of law and fact from the issues presented in this case. Dykes, charged with the murder of his wife whom he claimed was accidentally shot in a confrontation between himself and his father-in-law, had previously been tried for the murder of his father-in-law, and defended the case on the issue of self-defense and was acquitted. Cohen had not been charged or tried on the underlying assault on Tyrone Johnson. This was pointed out by the trial court in the record when the proposed defense instruction was denied. The primary issue asserted in *Dykes* was whether instructions submitted by the State which were related to the self-defense from the father-in-law amounted to a re-trial of the issues already adjudicated in the earlier trial (a collateral estoppel issue). In other words, in that case the jury was instructed that it could find that Dykes had in fact murdered his father-in-law (a crime for which he had already been acquitted) and in that event, under the doctrine of "transferred intent" would be guilty at common law for the murder of his wife. The Court ruled the instructions improper and that transferred intent did not apply where Dykes had already been acquitted in the shooting of the father-in-law. The State would therefore have to prove intent to assault and kill the wife as a separate act. It was only in dicta in *Dykes* that the Court said

> On a retrial of this case, the State's instructions should submit to the jury the issue of whether defendant intentionally murdered his wife, and an incidental factor would be that manslaughter could be comprehended within the greater charge of intentional killing. The evidence warranted the jury in finding that defendant shot Evelyn with the deliberate design to kill her. Whether or not that intent was the cause of her death should be the issue submitted to the jury on a new trial. Of course, defendant will have the right to again submit to another jury his defense that she was accidentally killed. These comments do not preclude either the State or the defendant from introducing evidence showing all of the surrounding circumstances, including the affray with Mr. Shannon, which are closely connected and related factually to the shooting of Mrs. Dykes.

*Id.* at 606.

¶16. When reviewing the instructions in this case as a whole, in particular, the combination of S-1A and S-3, the Court is of the opinion that the jury was adequately instructed. The denial of D-3, which does not correctly state the law as correctly determined by the trial court, was not reversible error.

**¶17. THE DECISION OF THE COURT OF APPEALS IS REVERSED. THE ORDER OF CONVICTION AND SENTENCE OF THE CIRCUIT COURT OF COAHOMA COUNTY IS REINSTATED.**

**PITTMAN, P.J., ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. PRATHER, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, J.**

**McRAE, JUSTICE, DISSENTING:**

¶18. The majority considers "**on its own initiative**" the issue of the State's right to certiorari. Accordingly, I dissent. Only a year ago, Justice Smith authored the majority in ***Harris***, in which he stated:

> *Certiorari is not a matter of right . . . . To hold otherwise would be to deny finality to Court of Appeals decisions, contrary to the express declaration of finality in M.R.A.P. 17(a) and Miss. Code Ann. § 9-4-3(2) (Supp. 1996). . . [Further,] [e]xcept as to those cases which by statute must be retained by this Court, no litigant has a right to further review by certiorari.*

***Harris v. State***, 704 So.2d 1286, 1288 (Miss. 1997) (emphasis added), ***abrogated on other grounds***, ***Jackson v. State***, No. 98-DP-00708-SCT, 1998 WL 469953 (Miss. Aug. 13, 1998).

¶19. The author of today's majority opinion quickly changes his position on the vitality of the Court of Appeals. Today, Justice Smith's majority does that which he warns against in ***Harris***--his majority "holds otherwise" and denies finality to our Court of Appeals which was the basis for having the deflective system passed by legislation. Today's majority opens the floodgates to further negative redefinition of the Court of Appeals. This decision is monumentally imprudent. I must dissent.

¶20. The majority punctuates the fact that Miss. Code Ann. § 9-4-3(2)(Supp. 1998) deems "[d]ecisions of the Court of Appeals are final and are not subject to review by the Supreme Court, except by writ of certiorari." ***Id.*** If Court of Appeals decisions are final for defendants, then they should be final for the State. Further, in the same fashion that the State is precluded from appeal in criminal trials, the State should not be able to appeal Court of Appeals decisions. Indeed, decisions are inherently more final from the Court of Appeals than are judgments from a trial court. Thus, the Court finds that it must consider "**on its own initiative**" the issue of the State's right to file a Petition for Writ of Certiorari. It acts on its own initiative because it has no authority otherwise to reach the merits of the reversal of conviction granted by the Court of Appeals. The majority feels that M.R.A.P. 17 is "virtually silent" on the issue of granting certiorari. Such a perspective is at best unreasonable. The majority dutifully quotes the language of Rule 17(a), but it neglects to actually analyze those words. Rule 17(a) provides that a decision by the Court of Appeals is only reviewable on certiorari, but that grant of certiorari is "not a matter of right, but a matter of judicial discretion." M.R.A.P. 17(a). Such language is not "virtually silent," but facially clear. The rule says that certiorari may be granted solely on the grounds of judicial discretion, but neither the Rules nor statutes maintain discretion to grant certiorari to the State in a criminal case such as the one at bar. Any discretion otherwise granted to the Supreme Court vanishes under the language of Miss. Code Ann. § 99-35-103 (1994). Section 99-35-103, as dutifully quoted by the majority, states that the State may bring a criminal appeal in a limited number of situations. No language in § 99-35-103 grants the State power to appeal in this case, so the State seeks certiorari. And, the Court grants it. The Court does so by distinguishing the term "certiorari" from the term "appeal." The majority is "stretching."

¶21. *Black's Law Dictionary*, in its definition of "appeal," states that "an appeal may be as of right (*e.g.* from trial court to intermediate appellate court) or only at the discretion of the appellate court (*e.g.* by writ of certiorari to U.S. Supreme Court)." *See Black's Law Dictionary* 96 (6th ed. 1990). Despite the plain language of this definition of appeal, the Court today decides that certiorari is no longer a discretionary appeal. Hence, the Court changes the law by implying that certiorari is its own entity distinguished from the appeals defined by the language of § 99-35-103. Then the Court molds certiorari into a new form--that of a non-discretionary appeal divorced from the statutory mandates crafted by the Legislature.

¶22. The Court constructs its new-fangled "State criminal appeals under the rubric of certiorari" rule by analyzing the law of other states. Yet, the Court unreasonably avoids the fact that "[c]ases from other jurisdictions granting certiorari in criminal cases are not generally helpful because of different procedures and statutes." *State ex rel. Town of Hanover v. Hanover Dist. Court*, 317 A.2d 785, 786 (N.H. 1974). Beyond this fact, one can also look to other jurisdictions for the view opposite that of the majority. In Minnesota, "the policy of this court in denying to the state the right to appeal or review in a criminal matter is now of such long standing that if it is changed it should be done by the legislature and not by the courts." *State ex rel. King v. Ruegemer*, 57 N.W. 2d 153, 156 (Minn. 1953) (the case is still good law; yet, *State v. Wingo*, 266 N.W. 2d 508 (Minn. 1978) shows that the Legislature eventually did act). The point is that the majority selectively chooses cases to justify its law. The Court does not even mention that cases offering the opposing view exist. Further, there is no need to look at other jurisdictions. We have our own rules that do not allow certiorari as our Court of Appeals is a final court created under our deflective system. The Court simply acts conclusively and uses the law in a fashion that serves its purpose of creating a right of certiorari and, subsequently, reinstating the accused's conviction.

¶23. The majority weakens its own opinion by tactics to gloss over its inconsistent, results-based perspective on the law. In a footnote, Justice Smith cites one of his own opinions, which declared constitutional the Court of Appeals: "[e]xamination of the language of Miss. Code Ann. § 9-4-3 (Supp. 1994) clearly indicates that the *Court of Appeals is of the same character as the Supreme Court as both are appellate courts*. . . . More importantly, the decisions of the Court of Appeals are *subject to limited certiorari* by the Supreme Court." *Marshall v. State*, 662 So. 2d 566, 572 (Miss. 1995) (Smith, J., majority) (emphasis added). If the Court of Appeals' decisions are to be subject to limited certiorari, why are we abrogating the law of § 99-35-103 and allowing broader certiorari, i.e., greater appellate action by our Court and less discretion, than our Legislature mandates? The Legislature created mechanisms for a Court of Appeals. Indeed, our Mississippi Constitution states that "[t]he judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this constitution," Miss. Const. art. 6, § 144, and that "[t]he legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." Miss. Const. art. 6, § 172. Even the majority's author has previously stated that "[t]he Court of Appeals is clearly an inferior court and the Legislature had full constitutional authority to establish such inferior court." *Marshall v. State*, 662 So.2d 566, 568 (Miss. 1995) (Smith, J., majority). Yet, today, the majority succeeds in taking back power rightfully vested in the Court of Appeals.

¶24. The Court is acting on its own initiative, i.e., it is legislating. The Court is entrenching. The State should not be given extra "rights" that legislatively have not been authorized. Therefore, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

**PRATHER, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶25. To the extent that the majority opinion addresses the State's ability to petition for *writ of certiorari*, I concur. However, because the judgment of the Court of Appeals was correct and should be affirmed, I must dissent with regard to the merits of the case.

¶26. As the Court of Appeals concluded, Cohen was entitled to an accidental injury instruction. ***See Jackson v. State***, 645 So. 2d 921, 924-25 (Miss. 1994). The Court of Appeals also correctly noted that the defense instruction offered on this point was "not . . . perfectly drawn". A more appropriate instruction[3] would be:

> The court instructs the jury that if the jury finds that Keith Dewayne Cohen was acting in lawful self-defense from any sudden or sufficient provocation, when he accidentally and/or through misfortune injured a bystander, and such injury was not caused purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; the shooting and injuring of another human being shall be excusable.

¶27. I agree that the State had the authority to petition for *writ of certiorari* in this case. However, Cohen was entitled to an accidental injury instruction. Therefore, because I would uphold the decision of the Court of Appeals to reverse and remand this case, I must dissent in part.

**BANKS, J., JOINS THIS OPINION.**

1. The language of subsection (c) indicates that the limitation on the state is in the *filing* of the original appeal, but once the defendant in the trial court files the appeal, the state is automatically granted the status of cross-appellant to allow it to raise issues that may not be brought by appellant. However, no case authority has been found making this interpretation.

2. Since the Miss. Court of Appeals was not created by constitutional provision, but by legislative enactment, the Miss. Constitution of 1890 offers no guidance on the issue, but see *Marshall v. State*, 662 So. 2d 566 (Miss. 1995) which held that:

> . . . Miss. Code Ann. § 9-4-3(1) reserves unto the Supreme Court absolute subject matter jurisdiction over certain cases. It is also noteworthy that the Court of Appeals does not have original jurisdiction as all cases received by that court are assigned to it by the Supreme Court. Additionally, at any time prior to a final decision by the Court of Appeals, cases are certainly subject to removal and return to the Supreme Court. More importantly, the decisions of the Court of Appeals are subject to limited certiorari by the Supreme Court. It is thus clear that a court is an "inferior court" when subject to the controlling authority or review of a constitutionally created court. See, *Ex Parte Tucker*, 164 Miss. 20, 143 So. 700 (1932).

> This Court holds that Miss. Code Ann. §§ 9-4-1 to -17 (Supp.1994) are constitutional.

*Id*. at 572.

3. This instruction would incorporate the language of the aggravated assault statute, Miss. Code Ann. § 97-3-7(2) (1994), which provides:

> (2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .